377 N.E.2d 657 (1978)
MID AMERICA HOMES, INC., Appellant (Plaintiff below),
v.
Eldon HORN and Mary Horn, Husband and Wife, Appellees (Defendants below).
No. 3-1076A235.
Court of Appeals of Indiana, Third District.
June 22, 1978.
Rehearing Denied August 8, 1978.
*658 Alan E. O'Connor, Hobart, for appellant.
E. Lee Bazini, Warsaw, for appellees.
STATON, Judge.
The trial court denied relief to Mid America on its complaint to foreclose upon a lien, since it had failed to give the Horns notice as required by IC 32-8-3-1, Ind. Ann. Stat. § 43-701 (Burns Code Ed.) and had failed to meet the disclosure requirement of the Truth In Lending Act. After reviewing the evidence and the applicable law, we conclude that statutory notice was given by Mid America and that the Truth In Lending Act does not apply to the facts before the trial court. We reverse the judgment of the trial court with instruction to enter judgment for Mid America.

I.

Evidence
On August 29, 1973, Appellees Eldon and Mary Horn entered into an oral agreement to purchase real estate from Joseph A. and Doris E. Arnold. Two days later, on August 31, 1973, the Horns entered into a written contract with James A. Kline, d/b/a Jamco Builders for the construction of a new single family dwelling home for the Horns on the Arnolds' real estate. The contract price was $31,400.00. The Horns gave Jamco $3,100.00 as a down payment on the home.
On September 5, 1973, Jamco ordered a "house and trim package" from appellant Mid America. The order designated Eldon Horn as the buyer. On September 11, 1973, Mid America delivered the "house package" to the Arnolds' real estate. The invoice bore Eldon Horn's name. At the same time, Mid America forwarded, by certified mail, a written notice to the Arnolds, record titleholders of the real estate, that it was furnishing materials, and, absent payment, would place a lien against the real estate. On September 14, 1973, Joseph Arnold receipted for the notice of September 11. On September 18, 1973, the Arnolds conveyed to the Horns title to the real estate. The deed was recorded the same day. On September 24, 1973, Mid America received the notice receipt from Arnold. At the bottom of the receipt, Arnold advised Mid America that, as of September 19, the titleholders of record were the Horns. The Horns made additional payments to Jamco on September 12, 1973, November 28, 1973, and January 30, 1974. Jamco never paid Mid America the amount due on the Horns' order. On December 17, 1973, Mid America recorded its Notice of Intention to Hold Mechanic's Lien on the Horns' property. Notice was sent to the Horns, the recorded titleholders. On August 23, 1974, Mid America filed to foreclose its mechanic's lien for labor and materials in the amount of $11,624.44, plus interest. (Mid America secured a default judgment against James and Peggy Kline, *659 d/b/a Jamco, who failed to appear and defend the action.)
A court trial resulted in judgment for the Horns. Mid America appeals from this negative judgment, claiming it had an enforceable mechanic's lien on the Horns' property. The appeal before us raises two issues:
I: Did Mid America comply with the notice provisions of IC 32-8-3-1 by serving written notice on the Arnolds, who were the record title owners of the real estate?
II: Did the Federal Truth In Lending Act apply to the transaction?

II.

Mechanics' Liens Statute
Before Mid America could have acquired a lien upon the Horns' property, it must have satisfied the notice requirement of IC 32-8-3-1 which stated:[1]
"Any person, firm, partnership or corporation who sells or furnishes on credit any material, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place to any contractor, subcontractor, mechanic or anyone other than the owner or his legal representatives shall furnish said owner a written notice of the delivery or labor and the existence of lien rights within fourteen [14] days from the date of the first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien upon such real estate or upon the improvement constructed thereon."
Mid America contends that it satisfied the notice requirement by serving timely notice on the Arnolds, the recorded legal titleholders of the real estate, that it was furnishing labor and materials for construction of a house thereon. The Horns claim that, as owners of the proposed dwelling and equitable title owners of the real estate, they should have received notice. The Horns point out that Mid America had knowledge they were the buyers of the materials. Eldon Horn's name appeared on both the order and the invoice; in addition, one day before the fourteen-day notice period had expired, Mid America received notification from the Arnolds of the change in title.
At the time Mid America furnished construction materials, the Horns held equitable title to the real estate under a contract to purchase. The Horns could contract for improvements and thus subject their interest to a mechanic's lien. Kendall Lumber & Coal Co. v. Roman (1950), 120 Ind. App. 368, 91 N.E.2d 187. However, the real estate was subsequently conveyed to the Horns. Thus, at the time Mid America filed its notice of intention to hold a lien, the Horns held legal title to the real estate. Any lien would attach to the full extent of the Horns' interest at that time. IC 32-8-3-2, Ind. Ann. Stat. § 42-702 (Burns Code Ed.); Fletcher Ave. Savings & Loan Ass'n v. Roberts (1934), 99 Ind. App. 391, 188 N.E. 794.
As a lien claimant, Mid America had the burden of proof to establish that its claim met the statutory requirements, including proper notice. Hough v. Zehrner (1973), 158 Ind. App. 409, 302 N.E.2d 881. One purpose served by the notice required in IC 32-8-3-1 is to enable the titleholder to protect his real estate against liens arising due to a contractor's failure to pay his subcontractors. Ideally, additional notice should be addressed to the person who contracts for the construction of a house, since he too can benefit by knowing that credit has been extended to subcontractors.
However, in this case, the Horns were not entitled to the notice protection provided by the statute. The Horns contracted for the construction of a home before taking legal title to the real estate. Mid America followed the reasonable business practice of searching the public records to ascertain the *660 owner of the real estate upon which its materials would be used. See William F. Steck Company v. Springfield (1972), 151 Ind. App. 671, 281 N.E.2d 530, concurring opinion. Mid America had no way of discerning from the public record that the Arnolds had orally contracted to sell the real estate to the Horns; therefore, Mid America had the right to rely on public records when it furnished notice to the Arnolds under the Mechanics' Liens Statute.
We conclude that Mid America satisfied the notice requirement of IC 32-8-3-1 by furnishing notice to the Arnolds, the recorded legal titleholders.

III.

Truth in Lending Act
Because we have determined that Mid America satisfied the notice requirements to acquire a mechanic's lien, we must consider the alternate ground upon which the trial court could have based its judgment for the Horns. The Horns contend that the lien was null and void due to Mid America's failure to meet the disclosure requirement of the Truth In Lending Act, specifically, that contained in 15 U.S.C. § 1635(a), which provides:
"(a) Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section."
Regulations issued by the Board of Governors of the Federal Reserve System specifically defined "security interest" to include mechanics' and materialmen's liens. 12 CFR § 226.2(gg). Therefore, if the transaction qualified as a "consumer credit transaction," Mid America would have been required to make certain disclosures to the Horns.
The purpose of the Act was
"to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit... ." 15 U.S.C. § 1601.
For that reason, the Act exempts
"(1) Credit transactions involving extensions of credit for business or commercial purposes, or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. § 1603(1).
According to Gerasta v. Hibernia National Bank, 411 F. Supp. 176, 185 (E.D.La. 1976),
"In determining whether a particular transaction is exempt, `the purpose of the transaction or extension of credit is controlling' and not the property which is the subject of the security interest involved."
In the instant case, the credit was not extended to consumers (the Horns), but instead to Jamco, a commercial entity. Although the property to which the lien attached was a private residence, the purpose of the transaction was to secure materials so that Jamco could construct a house. Only Jamco, after evaluating the terms of credit, could have selected its creditor. The Horns never acquired the right to rescind the credit transaction because they were not parties to the transaction. The Act's protections were not intended to encompass third parties to such a credit transaction. Jamco, the general contractor, was the principal obligor on the debt to Mid America. *661 Ostensibly, any interest accruing would be charged to Jamco; the purchase price the Horns would pay for the house had been determined before hand.
In most cases, the homeowner deals directly with the contractor and not with subcontractors when he chooses to build a home. Unnecessary confusion would arise if we were to interpret 15 U.S.C. § 1635 to grant a homeowner the right to rescind transactions between his contractor and the subcontractors. We hold that the Truth In Lending Act requires disclosure under 15 U.S.C. § 1635 only in instances in which the potential lien holder deals directly with the homeowner.[2] In cases like this one, the Indiana Mechanics' Liens Statute provides a sufficient means of notification to a homeowner that a lien may arise upon the failure of his contractor to pay subcontractors.
Mid America was not required to provide the Horns with disclosures under the Truth In Lending Act. Since Mid America followed the Indiana statutory procedure for acquiring a lien on the Horns' property, the trial court should have granted Mid America foreclosure of its lien on that property.
Reversed and remanded to the trial court, with instructions to enter judgment for Mid America.
HOFFMAN, J., and LOWDERMILK, J. (by designation), concur.
NOTES
[1] In 1977, the statute was amended to require notice of lien rights within sixty days rather than fourteen days.
[2] We decline to follow Hobbs Lumber Company v. Shidell (1974), 42 Ohio Misc. 21, 326 N.E.2d 706, in which a common pleas court invalidated the liens of materialmen who had failed to give the property homeowners notice as set out in the Truth In Lending Act.