Diane H. WIGGIN, Appellant
(Defendant Below),

v.

GEE CO., an Illinois Corporation,
Appellee (Plaintiff Below).

No. 3–476A98.

Court of Appeals of Indiana,
Third District.

March 20, 1979.

Rehearing Denied May 14, 1979.

Richard F. Joyce, Kizer, Neu, Joyce & Rockaway, Plymouth, for appellant.

J. Eric Smithburn, James E. Easterday, Feagler & Sowinski, Plymouth, for appellee.

STATON, Judge.

Gee Company is an Illinois corporation engaged in the lumber supply business. On May 4, 1974, it received an order from a friend of Diane H. Wiggin for building materials to be supplied to her for the construction of a child day care center. This facility was to be owned and run by Wiggin and was constructed as an addition to her private residence. Gee Company was apparently unaware of this physical arrangement.

The construction materials were to be supplied in two shipments, each on a "cash on delivery" basis. Payment for the first shipment was made by Wiggin's friend on May 15, 1974, and the materials were dispatched on the next day.

The second shipment of construction materials was initially withheld from Wiggin after her failure to tender cash for its delivery. Between the 14th and 16th of June, 1974, Wiggin had a telephone conversation with a representative of Gee Company. At this time, she assured him of her ability to make payment if he would authorize delivery of the additional materials. The representative subsequently dispatched the second shipment on July 29, 1974, but only after verifying Wiggin's representations of financial solvency.

Gee Company supplied materials to Wiggin in the total amount of Twelve Thousand Five Hundred Twenty-eight Dollars Fifty-seven Cents ($12,528.57) of which Five Thousand Three Hundred Ninety-one Dollars Sixty-one Cents ($5,399.61) was paid. The remaining balance of Seven Thousand One Hundred Twenty-eight Dollars Ninety-six Cents ($7,128.96) was subject to a finance charge which increased the final balance owed by Wiggin to Seven Thousand Four Hundred Eighteen Dollars Eighty-four Cents ($7,418.84).

On September 7, 1974, Gee Company wrote a letter to Wiggin demanding that she pay a balance of Seven Thousand Thirty-four Dollars Twenty-four Cents ($7,034.24). It then filed a Notice of Intention to Hold a Mechanic's Lien with the Recorder of Marshall County on September 10, 1974. This Notice was filed in accordance with the time provisions of IC 1971, 32–8–3–3 (Burns Code Ed.).

Gee Company filed a complaint to foreclose its mechanic's lien in the Marshall

Circuit Court on February 3, 1975. On October 2, 1974, the trial court found Gee Company to be entitled to a mechanic's lien on Wiggin's real estate for the full amount of its claim plus an additional One Thousand Seventy-five Dollars ($1,075.00) in attorney fees. The trial court also declared the day care addition to Wiggin's private residence to be a business building.

Wiggin appeals the judgment of the trial court for the following reasons:

(1) The trial court's finding that the addition to her owner-occupied single family dwelling constitutes a business is contrary to the evidence.

(2) The trial court's failure to apply the notice provisions of IC 1971, 32–8–3–1 (Burns Code Ed.), rather than IC 1971, 32–8–3–3, *supra*, to her structure is contrary to law.

The principal questions to be resolved here is which of two mechanic's lien statutes is applicable to the facts in this case.

IC 1971, 32–8–3–1, as it was in effect at the time of this lawsuit,[1] required a material supplier to file a notice of intention to hold a mechanic's lien, with the county recorder within five (5) days of the first delivery of materials in order to perfect his lien. This statute applies to property liens, for materials provided in the

"alteration or repair of any owner-occupied single or double family dwelling or the appurtenances or additions thereto, . . ."

IC 1971, 32–8–3–3 allows for the perfection of a mechanic's lien upon any property by filing notice thereof with the county recorder within sixty (60) days of the date of the last delivery of materials.

The trial record shows that Gee Company's Notice of Intention to Hold Mechanic's Lien was filed within sixty (60) days of its last delivery of materials. Since the trial court found Wiggin's premises to be a business, this procedure would be adequate to establish Gee Company's lien under IC 1971, 32–8–3–3.

The parties stipulated in their pre-trial order that Gee Company sent no notice of lien rights to Wiggin within five days of its first delivery of materials, as was required under IC 1971, 32–8–3–1. This omission would be fatal to the existence of Gee Company's lien only if Wiggin's combination home and day nursery could be said to constitute a family dwelling.

The statutory language with which we are concerned refers to appurtenances or additions made to single or double family dwellings. No stipulation is made as to the nature or intended purposes of the appurtenances or additions. However, it is clear from the statute's use of the phrase "owner occupied . . . family dwelling" that its intent is to regulate liens on private domestic residences. This perspective may be reinforced by an examination of the reason behind the aforementioned five day notice requirement.

IC 1971, 32–8–3–1, as it was in effect at the time of this lawsuit,[2] required a material man to file a notice of intention to hold a mechanic's lien within fourteen (14) days of his first delivery of materials supplied for the construction of a *new* house. The reason behind this rule is discussed in *William F. Steck Co. v. Springfield* (1972), 151 Ind. App. 671, 677, 281 N.E.2d 530, 534:

"The intended purpose of this statute is to put the 'owner' on notice of all the outstanding indebtedness that the contractor has incurred during the building of a new home. Where the 'owner' of real estate is contracting to have an original single or double family dwelling constructed upon real estate to which he holds title, the only protection from unpaid bills for material and labor that such member of the public has when settling his account with the contractor is this provision of the statute. . . ."

This rationale may reasonably be extended to encompass the five day notice require-

---

1. As amended, the statute now allows thirty (30) days in which to file notice. IC 1971, 32–8–3–1 (Burns Code Ed., Supp.1978).

2. As amended, the statute now allows sixty (60) days in which to file notice. IC 1971, 32–8–3–1 (Burns Code Ed., Supp.1978).

ment under consideration here. The effect of this rule is to place private homeowners in a protected category apart from others, such as entrepreneurs, who may also be subject to mechanic's liens.

The extraordinary notice provisions of IC 1971, 32–8–3–1, when considered in the light of its emphasis on "family dwelling," indicates that the unequivocal intent of this statute is to defend private homeowners from liability for unexpected liens resulting from a contractor's failure to pay for materials utilized in construction. Therefore, any addition or appurtenance to a home which markedly departs from the furtherance of a domestic residential purpose clearly falls outside of the regulatory scheme envisioned by this statute.

Wiggin contends that the addition of a day nursery to her home did not alter the residential character of that structure. However, the intent behind its construction was to further a commercial enterprise fundamentally at variance with the uses commonly made of a domestic residence. Although Wiggin undoubtedly also made use of the addition for familial purposes, such occasional departures from its principal scheme of usage are insufficient to alter the primary purpose for its construction. By declaring Wiggin's home and day nursery to be a family dwelling, we would be denying Gee Company a lien for material incorporated into a business building solely because of the latter's close proximity to a family home. No such procedure is authorized by statute.

IC 1971, 32–8–3–1 is in derogation of the common law and should be strictly construed as to its scope. *Hough v. Zehrner* (1973), 158 Ind.App. 409, 412, 302 N.E.2d 881, 883. The failure of Wiggin's day school addition to conform to the uses contemplated by this statute places it outside the scope of its regulation. Since IC 1971, 32–8–3–3 is the only other lien statute applicable to the facts of this case, the trial court correctly utilized it in conferring Gee Company a lien on Wiggin's property.

We affirm.

LOWDERMILK, J. (by designation), concurs.

GARRARD, P. J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

I must vigorously dissent to the majority opinion in this case and must further state that I believe the case of *Mid America Homes v. Horn* (1978), Ind.App., 377 N.E.2d 657, recently handed down by this court was wrongly decided.

While it is true that a friend of appellant, who described himself as assisting the contractor, contracted Gee Co., the court's findings clearly show that judgment was not entered upon the basis that Gee Co. dealt directly with the owner within the contemplation of IC 32–8–3–1.

What does not appear in the majority opinion is that Wiggin contracted with one Singleton to build the addition for $27,-835.20; that she paid him $26,000; that he did not complete the job; and that she expended additional funds for its completion. Gee Co.'s invoices were billed to Singleton.

I quite agree with the majority that the purpose of the amendments to the mechanic's lien statute, IC 32–8–3–1, was to protect the owner-occupier of a one or two family residence from the lien rights of subcontractors and materialmen unless the owner was given written notice at the outset of the potential for such a lien.[1] Then he could insure that if he paid the prime contractors the subs would be paid; that if the contractor became insolvent he would not have to either pay twice for the work or lose his home.

The pertinent portion of the statute states,

"Any person . . . who sells or furnishes on credit any material, labor or

---

1. Of course where the owner deals directly with a subcontractor or materialman he knows of the debt and, as the statute recognizes, does not need the protection.

machinery for the alteration or repair of any owner-occupied single or double family dwelling or the appurtenances or additions thereto, to . . . anyone other than the occupying owner or his legal representative shall furnish to the occupying owner . . . a written notice . . . of the existence of lien rights, within five [5] days from the date of first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien . . . ." [2]

There is no question but that Gee Co. furnished no such notice. There is no question that we are concerned with an owner-occupied single family dwelling and an alteration and addition thereto.

The trial court and the majority conclude that because the addition was to be used primarily for conducting a home business, although it would also be used for family purposes, the statute is inapplicable.

I cannot agree. The plain language of the statute makes no such distinction or qualification. Nor can I agree with the inference the majority draws from the legislative purpose. The purpose was to protect the owner-occupiers and their homes from contractors who did not pay their subcontractors and materialmen unless the homeowner had notice of their lien rights. The majority result appears to me to do the contrary.

I dissent.

---

2. The majority opinion errs in asserting this notice is to be "filed" with the recorder.