Alan J. CYR and Darlene K. Cyr,
Appellants–Defendants,

v.

J. YODER, INC. and Northside
Plumbing Co., Inc., Appellees–
Plaintiffs.

No. 02A04–0109–CV–403.

Court of Appeals of Indiana.

Jan. 29, 2002.

Jeffrey P. Smith, W. Randall Kammeyer, Hawk, Haynie, Kammeyer & Chickedantz, Fort Wayne, IN, Attorneys for Appellants.

John E. Williams, Jr., Fort Wayne, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

We are called upon today to decide whether the provisions of our Home Improvement Act[1] apply to insurance loss repair cases. Appellants-defendants and counter-claimants Alan and Darlene Cyr (the Cyrs) appeal the trial court's judgment entered in favor of the appellees-plaintiffs J. Yoder, Inc. (Yoder) and Northside Plumbing Co. (Northside), claiming that the judgment entered in this small claims action was contrary to law. Specifically, the Cyrs contend that the trial court erroneously concluded that their dealings with Northside and Yoder were not governed by the Home Improvement Act. The Cyrs also contend that the trial court erred in determining that they had failed to satisfy their burden of proof with regard to their counterclaims against both contractors. Thus, the Cyrs claim that they were entitled to damages from both Yoder and Northside for defective workmanship.

## FACTS

The facts most favorable to the judgment are that in January 1994, Yoder received a telephone call from the Cyrs' insurance agent, requesting repair estimates as a result of water damage that had occurred to the Cyrs' residence. The insurance company ultimately approved and authorized the work, and Yoder made certain repairs between June 1994 and November 1996. After the work was completed, Yoder supplied the Cyrs or the insurance company with copies of estimates and in-

voices. Thereafter, the Cyrs complained that the work had not been performed in a satisfactory manner, inasmuch a water leak in the residence had not been properly repaired and additional damage had occurred to the residence.

Northside also made repairs to the residence as a result of the water damage. Apparently, the only documents submitted to the Cyrs from Northside were work orders regarding the work that had been completed. The Cyrs paid neither Northside nor Yoder. As a result, on March 2, 2000, Yoder and Northside Plumbing filed their respective causes of action against the Cyrs for non-payment of the accounts. The Cyrs filed an answer denying the claim and submitted a counter-claim against both Yoder and Northside. The basis of the counterclaim was that both contractors failed to repair the water leaks in a workmanlike and satisfactory manner, thereby causing additional damage to the premises. The Cyrs also asserted that both contractors had violated the Home Improvement Act. Thus, the Cyrs requested statutory damages and attorney fees.[2]

Following a bench trial on April 10, 2001, the trial court took the matter under advisement. On May 9, 2001, it entered findings of fact and conclusions of law and entered judgment for Yoder in the amount of $5364.95. Appellant's App. at 7. The court also entered judgment for Northside in the amount of $689.28. Appellant's App. at 7. The Cyrs now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

▮ We initially observe that when, as here, the trial court issues findings of

---

1. IND. CODE § 24–5–11–1 to –15.

2. I.C. § 24–5–11.5–14(b)(3) allows for the recovery of attorney's fees, as long those fees

are provided for in the written contract between the parties.

fact and conclusions of law *sua sponte*, we employ a two-tiered standard of review. That is, we first determine whether the evidence supports the findings, and secondly it must be decided whether the findings support the judgment. *E & L Rental Equip., Inc. v. Wade Constr., Inc.,* 752 N.E.2d 655, 658 (Ind.Ct.App.2001). The specific findings control only as to issues they cover, while a general judgment standard applies to any issue upon which the trial court has not entered findings. *Reinking v. Metro. Bd. of Zoning Appeals,* 671 N.E.2d 137, 140 (Ind.Ct.App.1996). We also note that inasmuch as the Cyrs are appealing from a negative judgment, they must demonstrate that the trial court's judgment is contrary to law in order to prevail. *United Farm Family Ins. Co. v. Riverside Auto Sales,* 753 N.E.2d 681, 684 (Ind.Ct.App.2001).

Additionally, in reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *E & L Rental Equip.,* 752 N.E.2d at 658. This court will not reweigh the evidence or assess the credibility of the witnesses. *Id.*

## II. The Cyrs' Claims

In resolving the issues presented by the Cyrs, we first note the purpose of our Home Improvement Act. As we observed in *Mullis v. Brennan,* 716 N.E.2d 58, 65 (Ind.Ct.App.1999), few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. Thus, reliance on the contractor, coupled with the well-known abuses found in the home improvement industry, no doubt served as an impetus for the passage of the Act. Through the Act, the legislature sought to protect consumers by placing specific minimum requirements on the contents of home improvement contracts. Thus, contractors are held to a strict standard.

Turning to the specific provisions of the Home Improvement Act, IND. CODE § 24-5-11-3 defines "home improvement" as "any alteration, repair or modification of residential property." Additionally, a "home improvement contract" means: "[A]n agreement, oral or written between a home improvement supplier and a consumer to make a home improvement and for which the contract price exceeds one hundred fifty dollars ($150)." I.C. § 24-5-11-4. A "home improvement supplier" is defined as "a person who engages in or solicits home improvement contracts whether or not the person deals directly with the consumer." I.C. § 24-5-11-6.

In accordance with the Home Improvement Act, IND. CODE § 24-5-11-10(a), the contract between the parties must contain, at a minimum, the following provisions:

(1) The name of the consumer and the address of the residential property that is the subject of the home improvement.

(2) The name and address of the home improvement supplier and each of the telephone numbers and names of any agent to whom consumer problems and inquires can be directed.

(3) The date the home improvement contract was submitted to the consumer and any time limitation on the consumer's acceptance of the home improvement contract.

(4) A reasonably detailed description of the proposed home improvements.

(5) If the description required by subdivision (4) does not include the specifications for the home improvement, a statement that the specifications will be provided to the consumer before commencing any work and that the home

improvement contract is subject to the consumer's separate written and dated approval of the specifications.

(6) The approximate starting and completion dates of the home improvements.

(7) A statement of any contingencies that would materially change the approximate completion date.

(8) The home improvement contract price.

(9) Signature lines for the home improvement supplier or the supplier's agent and for each consumer who is to be a party to the home improvement contract with a legible printed or a typed version of that person's name placed directly after or below the signature.

In addition to the above, before the consumer signs the contract, "the home improvement supplier must have agreed unequivocally by written signature to all of the terms of the home improvement contract." I.C. § 24–5–11–11. The contract must also reflect the dates that the supplier and each consumer executed the contract. I.C. § 24–5–11–12. Finally, where a permit is necessary for any part of a home improvement, the contract is subject to obtaining the necessary permits before commencing any work. I.C. § 24–5–11–9.

■ Contrary to Yoder and Northside's claims, the provisions of our Home Improvement Act make no exception for alterations, repairs or modifications that are the subject of insurance coverage. Our legislature's amendment to the Home Improvement Act in 2001 leads us to such a conclusion. Specifically, that amendment provides in part that:

(c) If a home improvement contract is entered into as a result of damage, loss, or expense that is covered, in whole or in part, *by the proceeds of an insurance policy,* or damage, loss, or expense for which a third party is liable, the follow-ing conditions and requirements apply to the contract:

(1) For the purpose of subsection (a)(4) through (a)(7), the description, completion dates, and statement of contingencies must be prepared for the proposed home improvements to the extent that the damage, loss, or expense is reasonably known by the home improvement supplier.

(2) For the purpose of subsection (a)(4), the requirement that a reasonably detailed description be included in the contract may be satisfied with a statement that the subject real estate will be repaired or restored to the same condition in which the real estate existed before the damage, loss, or expense occurred, or to a comparable condition.

(3) For the purpose of subsection (a)(6), the starting and completion dates may be expressed in terms of the *number of days elapsed from the date when sufficient approval of the insurance carrier terms allowing for adequate repair or restoration is obtained.*

(4) For the purpose of subsection (a)(8), the consumer may agree to a contract price expressed in terms of the consumer's liability for payment *after the application of insurance proceeds or payments from a liable third party.*

(5) The consumer may elect, in writing, to authorize the commencement of work on the home before the consumer receives complete specifications. However, a consumer who elects to authorize the commencement of work under this subdivision is obligated for the home improvements specified and agreed to *by the insurance carrier.*

I.C. § 24–5–11–10 (emphases supplied).

Although the amendments to the statute quoted above do not apply to the circumstances now before us because they did not

become effective until last year, it is apparent that the addition of this subsection to the Home Improvement Act simply sets forth certain conditions and requirements for those contracts that involve insurance coverage. There is nothing in the original version of the Home Improvement Act that would except insurance coverage contracts from its applicability. Once again, in considering the purpose of the Home Improvement Act set forth above, the protection of consumers is no less important merely because of the availability of insurance to cover the contract costs. Thus, we must conclude that the trial court erred when it held, in effect, that the Home Improvement Act was inapplicable in this case.

■ Turning to the particular circumstances here, it is undisputed that the contracts between the Cyrs and Yoder and the Cyrs and Northside were "home improvement contracts" within the meaning of the statute. The cost of the materials and labor provided by both Yoder and Northside to repair the water damage at the residence exceeded $150. It is also undisputed that the Cyrs never signed an agreement with either contractor, no permits were obtained and no documents were executed that would have satisfied the minimum statutory contract requirements. The estimates provided by Yoder failed to include the approximate starting and completion dates of the proposed work, a statement of the contingencies, or signature lines for the supplier and the consumers. Also, those estimates were not signed by the Cyrs or any of Yoder's representatives.

Similarly, Northside sent the Cyrs a statement with itemized work orders after the job had been completed. The Cyrs never received any contracts, estimates or proposals from Northside prior to its work at the residence. Northside's work orders failed to include approximate starting and completion dates, a statement of contingencies, or adequate signature lines for either party. Neither party signed those orders and Northside never pulled any permits for the job. As a result, we are compelled to conclude that Yoder and Northside were in violation of the Home Improvement Act. Moreover, both companies committed deceptive acts for which the Cyrs could bring an action for the damages they sustained.

Here, the Cyrs did pursue such an action by means of their counterclaim where they alleged that both Northside and Yoder had failed to perform their work in a skillful and workmanlike manner. At the hearing, the Cyrs testified that the water leaks had allegedly reappeared within six months after Northside and Yoder had completed their work. However, the Cyrs failed to show that the subsequent water damage was caused by the same repairs that the contractors had previously made. Thus, the trial court concluded that the Cyrs "failed to carry their burden of proof on their counterclaim." Appellant's brief at 11. This finding is supported by the evidence and that finding supports the trial court's judgment that the Cyrs could not recover on their counterclaim.

### CONCLUSION

In light of our discussion above, we conclude that the trial court erred in determining that the Cyrs' dealings with Northside and Yoder did not fall within the ambit of the Home Improvement Act. Thus, the damage award entered for Northside and Yoder must be set aside, and the Cyrs were entitled to proceed with their counterclaim against the contractors. We note, however, that the trial court properly determined that the Cyrs failed to meet their burden of proof on that counterclaim. Thus, the Cyrs may not

recover damages against Yoder or Northside.

Affirmed in part and reversed in part and the cause is remanded with instructions to vacate the judgment for Northside and Yoder against the Cyrs.

NAJAM, J., and MATTINGLY–MAY, J., concur.