**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 25 2012, 8:53 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES A. McENTARFER**
Stout & McEntarfer, P.C.
Angola, Indiana

ATTORNEY FOR APPELLEE:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN WALSH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 17A05-1107-PL-370 |
| | ) | |
| CHRIS SWEENEY CONSTRUCTION, INC., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEKALB SUPERIOR COURT
The Honorable Monte L. Brown, Judge
Cause No. 17D02-0910-PL-64

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Appellant-defendant Kevin Walsh ("Walsh") appeals the trial court's order foreclosing Appellee-plaintiff Chris Sweeney Construction, Inc.'s ("Sweeney Construction") mechanic's lien on his home, awarding Sweeney Construction unjust enrichment damages for unpaid labor services and attorney's fees, and denying his counterclaims against Sweeney Construction. We affirm and remand for correction of scrivener's error.

## Issues

Walsh presents three issues for our review, which we restate as:

I.  Whether the trial court erred in interpreting the Indiana Home Improvement Contract Act ("HICA") because it:

    (a) Allowed Sweeney Construction to pursue foreclosure of its mechanic's lien and unjust enrichment damages, even though it did not provide a written contract to Walsh that complied with the HICA; and

    (b) Denied his counterclaim based upon Sweeney Construction's non-compliance with HICA;

II. Whether the trial court erred by foreclosing on Sweeney Construction's mechanic's lien; and

III. Whether the trial court's computation of unjust enrichment damages is supported by evidence in the record.

## Facts and Procedural History

Chris Sweeney ("Sweeney") is the President of Sweeney Construction, a company that performs miscellaneous construction projects primarily in Steuben County, Indiana. Walsh owns a house on the other side of a lake from Sweeney's residence. In August 2008, Sweeney heard from Walsh's mother that Walsh was planning a renovation project on his

2

home, so Sweeney met with Walsh, Walsh's parents, and Walsh's friend, Frank Affatigato ("Affatigato") to discuss the project. Sweeney submitted a bid for certain portions of the work, but Walsh rejected it because it was too high.

Sometime later, Walsh called Sweeney, the two met, and Walsh asked Sweeney to submit bids for other parts of the renovation project. Sweeney submitted two written bids, one to frame the garage and breezeway for $7,100 and the other to frame the proposed screened patio area on the back of the house for $8,300. Walsh accepted the bids, but Sweeney did not draw up a written contract and Walsh never asked for one.

Sweeney began work, but the job was "a disaster" because the renovation project was disorganized, and "things would change all the time." Tr. 24-25. One of Sweeney's employees testified that "[he] didn't quite know what was going on…from one day to the next" and "there was…no one running the show." Tr. 86. Although Affatigato claimed at trial to be the project's general contractor, Sweeney testified that he didn't know what Affatigato's role was on the project, and that Affatigato did not act like the general contractor and he did not consider him as such. Instead, Affatigato performed his own job on the site, the stone and masonry work, and did not provide Sweeney with instructions on a daily basis. During the construction, Walsh did not live in the house,[1] and instead visited on weekends to inspect the project. After these weekend inspections, Walsh made several changes to the original plans that both he and Affatigato conveyed to Sweeney. Sweeney informed Walsh that changes in the work would require a price increase, but Walsh replied that he wanted the

_____

[1] Walsh's primary residence is in Valparaiso, Indiana. He also owns a business and real estate in Illinois.

3

changes and that Sweeney should go ahead and make them, without asking for specifics on the price increases.

Sweeney continued to work on Walsh's home and billed him for labor. Walsh paid Sweeney a total of $20,000, but when Sweeney sent Walsh another invoice in late November 2008, Walsh requested a meeting with Sweeney. At the meeting, Walsh told Sweeney that it would be best if they cut ties, and Sweeney told Walsh that Walsh still owed him $9,500. Sweeney offered to take $4,150 for his services and to walk away. Walsh never paid Sweeney any money on the final invoice, and dismissed him from the jobsite.

Sweeney Construction stopped working on Walsh's home on November 25, 2008, and filed a "Notice of Intention to Hold Mechanics [sic] Lien" in the amount of $4,150 in the Steuben County Recorder's Office on January 21, 2009. On August 5, 2009, Sweeney Construction filed a complaint in Steuben County Superior Court seeking foreclosure of the mechanics lien, alleging breach of contract, and seeking damages for unjust enrichment. Walsh answered the complaint and filed counterclaims on September 17, 2009. His specific counterclaims were that Sweeney Construction's complaint was frivolous thereby entitling him to attorney's fees, Sweeney Construction's lien was improper and slandered Walsh's title to the property, Sweeney Construction's decision to stop work resulted in a cost to Walsh of $4,000 to comply with county codes, Sweeney Construction's work was negligent, Sweeney Construction committed fraud by deceiving Walsh as to its competency, Sweeney Construction converted Walsh's money, and Sweeney Construction violated the HICA and therefore committed a deceptive act against Walsh.

4

On October 27, 2009, the case was transferred to DeKalb Superior Court. A bench trial commenced on April 19, 2011, and at the beginning of the trial, Sweeney Construction orally dismissed Count II of its complaint, the breach of contract claim. The parties submitted written final arguments following the trial, and on June 24, 2011, the trial court issued its final order. In that order, the trial court foreclosed on Sweeney Construction's mechanic's lien, ordered that Walsh pay Sweeney Construction $4,150 "for services rendered" and $10,585.09 for attorney's fees, and denied Walsh's counterclaims. App. 23.

Walsh now appeals.

**Discussion and Decision**

Standard of Review

When a trial court enters findings of fact and conclusions of law <u>sua sponte</u>, as it did here, we employ a two-tiered standard of review. <u>Cyr v. J. Yoder, Inc.</u>, 762 N.E.2d 148, 150 (Ind. Ct. App. 2002). We first determine whether the evidence supports the findings, and then whether the findings support the judgment. <u>Id.</u> The specific findings control only the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not entered findings. <u>Id.</u> A general judgment may be affirmed upon any legal theory supported by the evidence. <u>Humphries v. Ables</u>, 789 N.E.2d 1025, 1030 (Ind. Ct. App. 2003).

We will set aside findings only if they are clearly erroneous, meaning that the record contains no facts to support them, either directly or by inference. <u>Hayes v. Chapman</u>, 894 N.E.2d 1047, 1052 (Ind. Ct. App. 2008), <u>trans. denied</u>. A judgment is also clearly erroneous

5

if it applies the wrong legal standard to properly found facts. Id. We do not reweigh the evidence or assess witness credibility, and instead consider the evidence that supports the judgment and the reasonable inferences that may be drawn therefrom. Id. As always, however, questions of law are reviewed de novo. Id.

Interpretation of the HICA

*Non-compliance as a Defense to Sweeney Construction's Claims*

Walsh argues that Sweeney Construction's failure to provide Walsh with a written contract for its labor that complied with the HICA should preclude Sweeney Construction from foreclosing on its mechanic's lien and claiming an unjust enrichment recovery. In resolving this issue, we first recognize that the purpose of the HICA

> is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts…[because] few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with well-known abuses found in the home improvement industry, served as an impetus for the passage of [HICA], and contractors are therefore held to a strict standard.

Id. (quoting Benge v. Miller, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006)).

HICA therefore requires home improvement suppliers[2] performing any alteration, repair, or modification to the residential property of a consumer[3] for an amount greater than $150 to provide the consumer with a written home improvement contract. I.C. §§ 24-5-11-1, -3, -4, -10(a); Homer v. Burman, 743 N.E.2d 1144, 1148 (Ind. Ct. App. 2001). The home

---

[2] A "home improvement supplier" is a "person who engages in or solicits home improvement contracts[.]" I.C. § 24-5-11-6. Neither party disputes that Sweeney Construction is a home improvement supplier.

[3] A "consumer" means an individual who owns, leases, or rents the residential property that is the subject of a home improvement contract. I.C. § 24-5-11-2. Neither party disputes that Walsh is a consumer.

6

improvement supplier must provide a completed home improvement contract containing certain information to the consumer before it is signed by the consumer. I.C. § 24-5-11-10. Before the consumer signs the home improvement contract and before the consumer can be required to make any down payment, the home improvement supplier "must have agreed unequivocally by written signature to all of the terms of the home improvement contract." I.C. § 24-5-11-11. If a home improvement contract does not comply with these requirements, then it is unenforceable against the consumer. See Cyr, 762 N.E.2d at 152 (setting aside a damage award in favor of contractors where the home improvement contract failed to contain HICA requirements). Additionally, "a modification to a home improvement contract is not enforceable against a consumer unless the modification is stated in a writing that is signed by the consumer." I.C. § 24-5-11-10(d).

Sweeney Construction concedes that it failed to provide a written contract for any of the work performed, including subsequent modifications to the original plans. It therefore would have been unable to proceed under a contract theory in this case and accordingly dismissed its breach of contract claim before trial. Instead, Sweeney Construction elected to proceed on its foreclosure action and claim for unjust enrichment damages. Walsh nevertheless maintains that Sweeney Construction's non-compliance with HICA should preclude these claims as well.

In the absence of a contract, a party may recover under a theory of quantum meruit, also referred to as unjust enrichment. Troutwine Estates Dev. Co., LLC v. Comsub Design and Eng'g, Inc., 854 N.E.2d 890, 897 (Ind. Ct. App. 2006), trans. denied. Unjust enrichment

7

is an equitable doctrine that permits recovery when "'the circumstances are such that under the law of natural and immutable justice there should be recovery as though there has been a promise.'" King v. Terry, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004) (quoting Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991)). To prevail on a claim of unjust enrichment, the plaintiff must establish that a measurable benefit was conferred upon the defendant under such circumstances that the defendant's retention of the benefit would be unjust, and that plaintiff expected payment. Troutwine, 854 N.E.2d at 897; Id.

A laborer may attach a mechanic's lien to real estate in order to recover his wages and costs. I.C. § 32-28-3-1; R.T.B.H., Inc. v. Simon Property Group, 849 N.E.2d 764, 766 (Ind. Ct. App. 2006), trans. denied. A mechanic's lien is equitable in nature and is based upon a theory of unjust enrichment. Lee and Mayfield, Inc. v. Lykowski House Moving Eng'rs, Inc., 489 N.E.2d 603, 608 (Ind. Ct. App. 1986), trans. denied. "Trial courts have 'full discretion to fashion equitable remedies that are complete and fair to all parties involved.'" Robert Neises Const. Corp. v. Grand Innovations, Inc., 938 N.E.2d 1231, 1234 (Ind. Ct. App. 2010) (quoting Deutsche Bank Nat'l Trust Co. v. Mark Dill Plumbing Co., 903 N.E.2d 166, 168 (Ind. Ct. App. 2009), clarified on reh'g, 908 N.E.2d 1273 (Ind. Ct. App. 2009)).

The evidence most favorable to the judgment indicates that, at Walsh's request, Sweeney Construction provided various labor services to Walsh that exceeded the original plans. Sweeney expected to be paid for this additional work, and told Walsh that there would be charges associated with the changes to the plans. The services had a fair market value of $8,500. It is undisputed that Walsh never paid Sweeney for his additional work. Under these

8

circumstances, it would be unjust for Walsh to retain the benefit of Sweeney Construction's services despite its non-compliance with HICA. Nor should Sweeney Construction's non-compliance preclude foreclosure of its mechanic's lien, as a mechanic's lien is also an equitable remedy premised upon principles of unjust enrichment. We therefore disagree with Walsh that non-compliance with HICA precludes pursuit of the equitable remedies of unjust enrichment damages and a mechanic's lien.

Walsh additionally argues that the "unclean hands" principle of equity bars Sweeney's claims. Having not raised this argument before the trial court, however, he has waived our review of it. See Cavens v. Zaberdac, 849 N.E.2d 526, 533 (Ind. 2006) ("Issues not raised at the trial court are waived on appeal"). Waiver notwithstanding, we observe that the wrongdoing giving rise to an unclean hands allegation must have been intentional. Fairway Developers, Inc. v. Marcum, 832 N.E.2d 581, 584 (Ind. Ct. App. 2005), trans. denied. The trial court expressly found that Sweeney's failure to provide a written contract was not willful or intentional. Sweeney's challenge to this finding in his brief is an invitation to reweigh the evidence, which we will not do. Hayes, 894 N.E.2d at 1052. Consequently, Walsh's unclean hands argument fails.

*Walsh's HICA Counterclaim*

Walsh also maintains that the trial court erred by denying his counterclaim against Sweeney Construction for its failure to provide him with a written contract that complied with HICA.[4] A home improvement supplier who violates the HICA commits a deceptive act

---

[4] Walsh does not challenge the denial of his other counterclaims.

9

that is actionable by the attorney general or the consumer under Indiana Code section 24-5-0.5-4 and is subject to the remedies and penalties under Indiana Code section 24-5-0.5. I.C. § 24-5-11-14. Indiana Code section 24-5-0.5-4 provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." An "uncured deceptive act" means a deceptive act of which the consumer gave proper notice to the supplier and either the supplier made no offer to cure within thirty (30) days, or the act has not been cured within a reasonable time after the consumer's acceptance of the offer to cure. I.C. § 24-5-0.5-2(a)(7). An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead. I.C. § 24-5-0.5-2(a)(8).

> The section related to the limitation of these actions expressly states that:
>
> No action may be brought under this chapter…unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within [a certain time frame], which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

I.C. § 24-5-0.5-5.

Thus, HICA provides that a supplier's failure to give the consumer a written contract is a deceptive act, and brings that deceptive act under the purview of the remedies and penalties of Indiana Code chapter 24-5-0.5. Hayes, 894 N.E.2d at 1053. However, to establish entitlement to those remedies, the consumer must show that the deceptive act was either uncured, meaning that notice was given and the deceptive act was not cured, or

10

incurable, meaning that the supplier acted with intent to defraud or mislead the consumer.  Id.

Walsh offered no evidence at trial showing that he notified Sweeney Construction of its deceptive act or offered it the opportunity to cure the deceptive act.  The trial court found that Sweeney Construction's deceptive act was not willful or intentional and that it was not part of a scheme, artifice, or device intended to defraud or mislead Walsh.  Nothing in the record suggests otherwise.  We thus conclude that Sweeney Construction's deceptive act was neither uncured nor incurable.  The trial court therefore did not err by denying Walsh's counterclaim.

### Notice of Mechanic's Lien

Walsh next contends that the trial court erroneously ruled in Sweeney Construction's favor by foreclosing on its mechanic's lien.  Walsh specifically argues that foreclosure was an error because Sweeney Construction did not provide Walsh with adequate notice of its intention to hold the mechanic's lien.  We disagree.

A mechanic's lien, being a remedy unknown at common law, is a purely statutory creation.  Capital Drywall Supply, Inc. v. Jai Jagdish, Inc., 934 N.E.2d 1193, 1199 (Ind. Ct. App. 2010).  Because Indiana statutes governing the filing of a notice of an intention to hold a mechanic's lien are in derogation of common law, their provisions must be strictly construed.  Id. at 1199-1200.  Courts have strictly construed the requirements to create a lien, and liberally applied the remedial aspects of the mechanic's lien statutes.  Id.

Walsh argues that he was entitled to thirty days notice of Sweeney Construction's intention to hold a mechanic's lien, pursuant to Indiana Code section 32-28-3-1(h), which

11

provides that:

> A person, firm, partnership, limited liability company, or corporation that sells or furnishes on credit any material, labor, or machinery for the alteration or repair of an owner occupied single or double family dwelling or the appurtenances or additions to the dwelling to:
>
> > (1) a contractor, subcontractor, mechanic; or
> >
> > (2) anyone other than the occupying owner or the owner's legal representative;
>
> must furnish to the occupying owner of the parcel of land where the material, labor, or machinery is delivered a written notice of the delivery or work and of the existence of lien rights not later than thirty (30) days after the date of first delivery or labor performed. The furnishing of the notice is a condition precedent to the right of acquiring a lien upon the lot or parcel of land or the improvement on the lot or parcel of land.

In interpreting a prior version of this section, we concluded that "owner occupied…family dwelling" means "the private residence of the owner as distinguished from a residence owned and held for renting to tenant-occupants." Barker v. Brownsburg Lumber Co., Inc., 399 N.E.2d 426, 430 (Ind. Ct. App. 1980). We determined that this was consistent with the purpose of the overall statutory provision, which is "'to place private homeowners in a protected category apart from others, such as entrepreneurs, who may also be subject to mechanic's liens.'" Id. (quoting Wiggin v. Gee Co., 179 Ind. App. 631, 635, 386 N.E.2d 1218, 1220 (1979)). A structure can be owner occupied even if the owners do not live in the house during the construction giving rise to the lien. See id. (holding that a house was owner occupied even though the titled owners temporarily left during repairs).

However, whether or not Walsh's house here was owner occupied, he was not entitled to thirty days notice. The evidence favorable to the judgment indicates that Sweeney

Construction furnished its services to Walsh. Walsh hired and paid Sweeney Construction. After Walsh's weekend inspections, new tasks were assigned. Both Walsh and Affatigato gave Sweeney orders, and Walsh called Sweeney directly on the phone at least a dozen times during the project. Sweeney testified that Affatigato did not act like a general contractor and he did not consider him as such. It was Walsh who dismissed Sweeney Construction from the job. Therefore, if Walsh occupied the house, then he is not entitled to notice because Sweeney Construction furnished its services to him. If he did not occupy the house, then the house is not the type of structure with which the special notice provision is concerned.

Instead, pursuant to Indiana Code section 32-28-3-3, a person seeking a lien on a "Class 2 structure"[5] must file a sworn statement and notice of intent to hold a lien upon the property for the amount of the claim in the recorder's office of the county not later than sixty days after performing the labor or furnishing services. Sweeney Construction stopped work on November 25, 2008. It filed its notice of intention to hold a mechanic's lien less than sixty days later, on January 9, 2009. Sweeney was thus afforded adequate notice of the mechanic's lien. Foreclosure was proper.

<u>Calculation of Unjust Enrichment Damages</u>

Walsh also contends that there was no evidence in the record to support the trial court's calculation of unjust enrichment damages. We will reverse an award of damages only when it is not within the scope of the evidence before the finder of fact. <u>Crider & Crider, Inc. v. Downen</u>, 873 N.E.2d 1115, 1118 (Ind. Ct. App. 2007). The computation of damages

---

[5]A Class two structure includes an outbuilding such as a garage on a building or structure that contains or is intended to contain one or two dwelling units. I.C. 22-12-1-5.

13

is a matter within the trial court's discretion, and no degree of mathematical certainty is required so long as the amount awarded is supported by the evidence in the record. Romine v. Gagle, 782 N.E.2d 369, 382-83 (Ind. Ct. App. 2003), trans. denied. However, a damage award must be supported by probative evidence and cannot be based upon mere speculation, conjecture, or surmise. Crider & Crider, 873 N.E.2d at 1118. The award must be referenced to some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances. Id. In general, quantum meruit recovery is the "fair market value of services rendered," Matter of Estate of Carroll, 436 N.E.2d 864, 866 (Ind. Ct. App. 1982), or the "reasonable value" thereof. Mueller v. Karns, 873 N.E.2d 652, 659 (Ind. Ct. App. 2007). Invoices may be used as a measure of unjust enrichment. See Troutwine, 854 N.E.2d at 898 (holding that a party was entitled to payment under an unjust enrichment theory for invoiced services).

Here, Sweeney Construction presented Walsh with an invoice for $9,500 in unpaid services. Walsh testified that he incurred $1,000 in expenses to repair concrete work performed by Sweeney Construction. The trial court consequently determined that the fair market value of the unpaid services rendered to Walsh was $8,500. To arrive at a final damage award and avoid double recovery, it subtracted the amount of the mechanic's lien, $4,150, from the value of unpaid services, $8,500, and found for Sweeney Construction on its unjust enrichment claim in the amount of $4,350. Thus, there was evidence in the record to support the trial court's unjust enrichment damages calculation.

However, we observe that the trial court's order contains a typographical error in its

computation of overall damages. According to the order, the total damage award to Sweeney Construction was $14,735.09, which represents $10,585.09 in attorney's fees and $4,150 "For services rendered." App. 23. The amount owed for services rendered should be the trial court's unjust enrichment award of $4,350, not $4,150. We therefore remand to the trial court with instructions to enter an order directing Walsh to pay $4,350 in unjust enrichment damages.[6]

## Conclusion

Sweeney Construction's failure to provide a written contract in compliance with HICA does not preclude its claims for unjust enrichment damages and foreclosure of its mechanic's lien. Walsh did not notify Sweeney Construction of its non-compliance with the HICA, and Sweeney Construction's non-compliance was not part of a scheme, artifice, or device with intent to defraud or mislead. Therefore, the denial of Walsh's counterclaim must also be affirmed. Walsh was not entitled to thirty days notice of the intent to file a lien and such notice was instead filed in the recorder's office within sixty days of work stoppage. We therefore find no error in the trial court's decision to foreclose the lien. Evidence in the record supports the trial court's calculation of unjust enrichment damages, but because of a typographical error in the court's final order, we remand with instructions to enter an order directing Walsh to pay $4,350, not $4,150, for the unpaid services rendered by Sweeney Construction.

---

[6] The correct total for damages is therefore $14,935.09.

15

Affirmed and remanded.

BAKER, J., and DARDEN, J., concur.