**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANTS:

**LAURA S. REED**
**KEVIN N. THARP**
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GENE R. LEEUW**
**JOHN M. MEAD**
Leeuw Oberlies & Campbell, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CARMEL LOFTS LLC and )
KEYSTONE CONSTRUCTION CORP., )
           )
    Appellants-Plaintiffs, )
           )
        vs. )    No. 29A05-1205-PL-266
           )
ELBRECHT INVESTMENTS, LLC, )
           )
    Appellee-Defendant. )
           )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D03-1101-PL-546

**November 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Carmel Lofts LLC and Keystone Construction Corp. appeal the trial court's grant of summary judgment to Elbrecht Investments, LLC. Concluding that there is no genuine issue of material fact that Keystone did not give Elbrecht proper notice pursuant to the parties' subcontract to deduct a reasonable cost from Elbrecht's payments for an alleged default or neglect in its work and that the amount of Elbrecht's mechanic's lien against Carmel Lofts is for the full value of its retainage, we affirm the trial court.

**Facts and Procedural History**

Carmel Lofts is the owner of a mixed-use real estate development at 110 West Main Street in Carmel known as the Carmel Arts District Lofts & Shoppes ("the project"). Keystone, a related entity, was the general contractor for the project, which consisted of an underground parking garage, retail space on the first floor, and four floors of apartments and lofts.

On June 15, 2009, Keystone and Elbrecht entered into a Standard Form of Agreement Between Contractor and Subcontractor ("the Subcontract"), in which Elbrecht agreed to serve as a concrete subcontractor for the project. Section 3.4 of the Subcontract placed the following obligations on Keystone before it could deduct from sums owed to Elbrecht:

> If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, by appropriate Modification, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter

2

due the Subcontractor including any administrative or legal fees incurred by the Contractor.

Appellant's App. p. 75.

Pursuant to the Subcontract and all change orders, the total amount due was $2,017,835.40. Elbrecht began work under the Subcontract and submitted pay applications to Keystone totaling $2,009,835.40. Keystone paid 90% of that amount and held back 10%, or $200,983.54, in retainage as provided for in the Subcontract.

On December 13, 2010, Elbrecht filed a notice of intention to hold a mechanic's lien against Carmel Lofts' real estate in the amount of $200,983.54 in order to secure payment of the retainage.

Carmel Lofts filed a complaint against Elbrecht in January 2011. Carmel Lofts alleged that because Elbrecht had not fully performed the Subcontract (Elbrecht allegedly still needed to pour concrete for a staircase and a pool deck), Elbrecht's mechanic's lien slandered Carmel Lofts' title to the real estate. Pursuant to Indiana Code section 32-28-3-11, which allows substitution of a surety in place of a mechanic's lien, *see Bailey v. Holliday*, 806 N.E.2d 6, 10 (Ind. Ct. App. 2004), the trial court released the mechanic's lien, and Carmel Lofts posted a surety bond in the amount of $225,000. Appellant's App. p. 59.

In February 2011, Elbrecht filed a counterclaim against Carmel Lofts and Keystone for breach of the Subcontract, foreclosure of its mechanic's lien (by proceeding against the bond instead of the real estate), and unjust enrichment.

Although Elbrecht had requested a "punch list" for the project in December 2010, it was not until May 6, 2011, that Keystone presented Elbrecht with a punch list of items

3

that needed to be corrected. *Id.* at 217-18. The twenty-four-item punch list was created by the project architect, CSO Architects, and was entitled "Field Observation." Elbrecht worked on the punch-list items in May and June 2011. Elbrecht's project manager, Jason Kiser, then met with Keystone's project director, Bob Crowder, at the project site on July 5, 2011, to discuss the punch list. Although the parties dispute what was discussed at the meeting, it is undisputed that following the meeting, Crowder thought that "it was pointless for Keystone to ask Elbrecht to return to fix deficiencies in [its] work, or to give notice to Elbrecht that Keystone was hiring replacement contractors to perform Elbrecht's work." *Id.* at 302 (supplemental affidavit of Crowder). Thereafter, Keystone supplemented Elbrecht's work to address some of the alleged deficiencies.

In late November 2011, CSO Architects and Crowder performed a walk through at the project site, and CSO Architects, with Crowder's input, issued a revised punch list. Elbrecht was not notified of or invited to participate in this walk through.

Also in November 2011, Elbrecht moved for summary judgment. Carmel Lofts and Keystone filed a cross-motion for summary judgment. Following a hearing, in May 2012, the trial court entered summary judgment in favor of Elbrecht. Specifically, the trial court found:

> 6. Keystone presented Elbrecht with a punch list dated May 6, 2011. Elbrecht worked on the items listed on the punch list in May and June, 2011, and met with Keystone's project director, Bob Crowder, on July 5, 2011.
>
> 7. Keystone did not give the written notice required by the Subcontract Agreement following the July 5, 2011, meeting that it intended to commence correction of any claimed default or neglect on the part of Elbrecht.

4

*Id.* at 7. Accordingly, the court said that Elbrecht was entitled to recover from Keystone the sum of $200,983.54 plus prejudgment interest of $11,100.60. Finding that Elbrecht's notice of intention to hold a mechanic's lien "was timely recorded and create[d] a valid, enforceable lien against the property," the court concluded that Elbrecht was "entitled to judgment in rem against Carmel Lofts and foreclosure of its mechanic's lien against the property in the sum of $200,983.54," plus prejudgment interest of $11,100.60, post-judgment interest, and attorney's fees of $23,129.30. *Id.* at 7, 10. The court released the mechanic's lien bond with Hudson Insurance Company. *Id.* at 10. The court denied Carmel Lofts and Keystone's cross-motion for summary judgment.

Carmel Lofts and Keystone obtained a stay of execution of the final judgment pending their appeal by posting a $265,000 letter of credit. *Id.* at 327.

**Discussion and Decision**

Carmel Lofts and Keystone argue that the trial court erred in entering summary judgment in favor of Elbrecht and asks us to remand the case for trial. In reviewing an appeal of a motion-for-summary-judgment ruling, we apply the same standard applicable to the trial court. *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1110 (Ind. 2012), *reh'g denied*. Summary judgment is appropriate where the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Review is limited to those facts designated to the trial court, T.R. 56(H), and "[a]ll facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." *Presbytery of Ohio Valley*, 973 N.E.2d at 1110 (quotation omitted). The fact that

5

each party sought summary judgment does not alter our analysis. *Id.* Rather, we consider each motion separately construing the facts most favorably to the non-moving party in each instance. *Id.*

### I. Notice under the Subcontract

Carmel Lofts and Keystone first argue that the trial court erred in entering summary judgment for Elbrecht because the punch list was sufficient notice to Elbrecht pursuant to Section 3.4 of the Subcontract. *See* Appellant's Br. p. 14 ("In concluding that Section 3.4 required that Keystone give Elbrecht a *second* notice after the Punchlist, the trial court misinterpreted Section 3.4."). This issue requires us to examine the provisions of the Subcontract.

The interpretation of contract provisions is a question of law. *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000). Unless contract terms are ambiguous, they are given their plain and ordinary meaning. *Id.* Controversy between the parties regarding interpretation of contract terms does not necessitate ambiguity in the contract. *Id.* When provisions of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or look at extrinsic evidence; rather, we will merely apply the contractual provisions. *Id.* Our paramount goal in interpreting a contract is to ascertain and effectuate the intent of the parties. *Bernel v. Bernel*, 930 N.E.2d 673, 682 (Ind. Ct. App. 2010), *trans. denied.*

Section 3.4 of the Subcontract provides:

> If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the

6

> Contractor may, by appropriate Modification, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor including any administrative or legal fees incurred by the Contractor.

Appellant's App. p. 75. The plain language of the Subcontract requires Keystone to take three actions in the event that Elbrecht defaults or neglects to carry out the work in accordance with the parties' agreement: (1) issue written notice to Elbrecht to commence and continue correction of any default or neglect with diligence and promptness[1]; (2) give Elbrecht three working days after receipt of written notice to make corrections; and (3) if Elbrecht fails to make the corrections, then issue the "appropriate Modification" to the contract, all before it can deduct the reasonable cost of correcting the deficiencies from Elbrecht's payments. The trial court found that the Keystone failed to comply with the first step. We agree.

The evidence shows that CSO Architects visited the project site on May 6, 2011, for an observation and then created a document entitled "Field Observation" that contained twenty-four items that needed to be corrected.[2] *Id.* at 217-18. Notably, the document is not addressed to Elbrecht, and "Elbrecht" is not even named in the document. CSO Architects sent the document to Keystone on May 6, and Keystone emailed it to Elbrecht that same day. *Id.* at 299.

---

[1] Contrary to Carmel Lofts and Keystone's argument in their reply brief, *see* Appellant's Reply Br. p. 5 n. 2, we find that the written notice must inform Elbrecht to "commence and continue correction" of any alleged "default or neglect with diligence and promptness," Appellant's App. p. 75, and further inform Elbrecht that if Elbrecht does not correct the deficiencies within three working days, then Keystone may fix the deficiencies and deduct the reasonable cost from Elbrecht's payments.

[2] For example, the first item states: "On the first floor, east end there is a cold joint at the far southeast corner that extends approximately 8' into the building. There are many areas of this cold joint that need to be ground flat between the two pours." Appellant's App. p. 217.

7

While Keystone may have used the punch list as a tool to inform Elbrecht to fix certain items at the project site, the punch list does not satisfy Keystone's obligation to provide the notice required by Section 3.4 of the Subcontract that would then allow Keystone to modify the Subcontract, have someone else fix the deficiencies, and then deduct the reasonable cost from Elbrecht's payments. Notably, the punch list does not tell Elbrecht (1) "to commence and continue correction" of its "default or neglect with diligence and promptness" and (2) that it has "three working days after receipt of written notice" in which to correct the deficiencies. That is, the punch list contains no directive from the general contractor, Keystone; rather, it is a document prepared by the architect, CSO Architects, with whom Elbrecht has no contractual relationship. The punch list also gives no notice to Elbrecht that Keystone may correct the deficiencies and then deduct the reasonable cost from Elbrecht's payments. Despite Carmel Lofts and Keystone's argument on appeal that the Subcontract did not require Keystone to give a *second* notice to Elbrecht, we find that Keystone did not give *any* notice to Elbrecht pursuant to Section 3.4 of the Subcontract that would justify its attempts to deduct from Elbrecht's retainage. The effect of Keystone's failure to give proper notice to Elbrecht pursuant to Section 3.4 of the Subcontract is that Keystone had no objections to Elbrecht's work and therefore Keystone could not deduct from Elbrecht's retainage. The trial court properly entered summary judgment in favor of Elbrecht on the issue of notice.

In light of this holding, we do not need to address any of Carmel Lofts and Keystone's arguments regarding the costs Keystone incurred to fix the alleged

8

deficiencies, including whether certain portions of Crowder's affidavit are admissible to help establish these costs.[3]

## II. Mechanic's Lien

Carmel Lofts and Keystone next argue that the trial court erred in entering summary judgment for Elbrecht, a subcontractor, on its mechanic's lien claim against Carmel Lofts because the reasonable value of Elbrecht's work is far less than the $200,983.54 it claimed.

"The historical origin and purpose of mechanic's lien statutes was to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen." *Premier Invs. v. Suites of Am., Inc.*, 644 N.E.2d 124, 130 (Ind. 1994). The purpose of a mechanic's lien is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense. *Id.* Where a subcontractor of a general contractor seeks a lien on property where he has furnished labor and materials, a contract exists between the contractor and subcontractor,

---

[3] Carmel Lofts and Keystone make a separate argument that Elbrecht is not entitled to "final payment" pursuant to Section 12.1 of the Subcontract, which provides:

> Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner in accordance with the terms of the Prime Contract.

Appellant's App. p. 29. But Keystone cannot use this provision of the Subcontract to excuse its duty to give proper notice to Elbrecht to correct its deficiencies – and thus fully perform – under another provision of the Subcontract.

As for the parties' dispute about how much should be deducted for the pool deck that Elbrecht never completed, we find that $8000 was properly deducted because Elbrecht included $8200 in its original bid to Keystone.

9

but not between the subcontractor and the property owner. *Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29, 31 (Ind. Ct. App. 1995). In such a circumstance, while the contract price may be prima facie evidence of reasonable value, the lien is for the reasonable value of the work and material and not for the price as fixed by contract. *Id.*

Here, although the property owner, Carmel Lofts, and general contractor, Keystone Construction Corp., are not the same parties, the evidence shows, and the trial court found, that the entities are related. Their point of connection is Ersal Ozdemir. Ozdemir is the sole member of Keystone Group, LLC, a holding company which is the sole member of Carmel Lofts. Appellant's App. p. 132. Keystone Construction Corp. has three shareholders: Ozdemir (president) and two other individuals. *Id.* at 132, 137. This means that Ozdemir essentially hired his own company as the general contractor for the project. Thus, because Carmel Lofts and Keystone are so closely related, the trial court could find that Carmel Lofts was bound by the terms of the contract between Keystone and Elbrecht regarding notice and ultimately price. Accordingly, the trial court properly entered summary judgment for Elbrecht on its mechanic's lien claim against Carmel Lofts for the full amount of its retainage.[4]

Affirmed.

MATHIAS, J., and BARNES, J., concur.

---

[4] Elbrecht has requested appellate attorney fees pursuant to Indiana Code section 32-28-3-14(a), which provides that "in an action to enforce a lien under this chapter, a plaintiff or lienholder who recovers a judgment in any sum is entitled to recover reasonable attorney's fees. The court shall enter the attorney's fees as a part of the judgment." As we have previously explained, where a statute authorizes reasonable attorney fees, such fees include appellate attorney fees. *Hayes v. Chapman*, 894 N.E.2d 1047, 1055 (Ind. Ct. App. 2008), *trans. denied*. However, the proper way to raise this issue is to bring this request directly to the trial court. *Id.*