**UEBELHACK EQUIPMENT, INC.,**
Appellant (Defendant Below),

v.

**GARRETT BROTHERS, INC.,** Appellee
(Plaintiff Below)

and

**Viola Garrett, Unsupervised Personal Representative of the Estate of Rufus W. Garrett, Deceased, Appellee (Third-Party Defendant Below).**

No. 1–180A22.

Court of Appeals of Indiana,
First District.

July 23, 1980.

David O. Givens, Allyn & Givens, Mount Vernon, for appellant.

J. Robert Kinkle, Evans & Kinkle, Evansville, Verner P. Partenheimer, Jr., Hall, Partenheimer & Luecking, Princeton, for appellee.

ROBERTSON, Presiding Judge.

This suit arises out of a dispute concerning a contract to renovate and upgrade a grain elevator and storage facility. The case was tried below as an UCC Article–2 Sales Contract.[1] It was tried without benefit of jury and, as requested, the court made findings of fact and conclusions of law. We need not recite these findings except as needed to discuss the issues presented for appeal. We will say, for purposes of introduction, that the trial court found Edwin Uebelhack, as part owner and president of Uebelhack Equipment, Inc. (Uebelhack) contracted in October or November of 1976 with Paul Zimmer, part owner and manager of Garrett Brothers, Inc. (Garrett) to furnish and construct various bins, legs and other equipment and remove old equipment to renovate and expand Garrett's grain operations. The trial court found that the parties to the contract agreed to have the project completed, or at least operational, by April of 1977 in order that Garrett could be in business during the wheat, and later, the corn harvest. The only written evidence of the contract was a brief statement on Uebelhack stationery listing some of the equipment and the total contract price. The trial court did not specifically so state, but it can be inferred that it conceived of the contract as essentially oral.

Progress on the project was slow; deadlines were not met and progress was further slowed by the illness and death of Edwin Uebelhack, which occurred on July 6, 1977.

---

1. This is not raised as an issue on appeal and we will, with some reservation, accept it. We do note that the construction contract did involve predominately the sale of goods in terms of total contract cost. *See Thompson Farms, Inc. v. Corno Feed Products,* (1977) Ind.App., 366 N.E.2d 3 which cites *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* (7th Cir. 1976) 532 F.2d 572, a case involving the sale and assembly of a one million gallon water tank on site in which the court found the transaction to be within the Sales Article. *Pittsburgh* approved of the so-called "predominant factor" test, which is whether the predominant factor, the thrust, the purpose of the contract, reasonably stated, was the rendition of service with goods incidentally involved or a sale and purchase of "movable things", with labor or services incidentally involved. *Pittsburgh, supra* at 580 n.6.

On August 3, 1977, because of a dispute concerning the nature of the contract, Paul Uebelhack, brother of Edwin and part owner of Uebelhack, ceased work on the job. Garrett demanded complete performance, and upon refusal, contracted with another party to complete the job.

Garrett brought suit for damages for failure to complete the job and for defects in construction. Uebelhack counterclaimed for monies due. As stated above, the trial court found for Garrett. Uebelhack appeals.

Uebelhack treats the first two errors on appeal together and we will do likewise and we will further consider with these issues a third error raised.

The first error alleged is that there was insufficient evidence to support the trial court's finding that a valid contract had been entered into. The second error is whether it was error to admit into evidence certain statements made by Edwin Uebelhack concerning the contract. The third error concerns the sufficiency of evidence of the trial court's finding that a time deadline was a term of the contract.

It is axiomatic that the standard of review of sufficiency questions is that an appellate court will not weigh conflicting evidence nor resolve questions concerning credibility of witnesses. This court will consider only that evidence most favorable to the prevailing party, together with all reasonable inferences to be drawn therefrom and if from that viewpoint there is evidence of probative value to sustain the judgment of the trial court, the judgment will not be disturbed. *Wallace v. Rogier*, (1979) Ind.App., 395 N.E.2d 297.

Since the trial court made findings of fact, we are further guided by the standard that the findings will be upheld unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A).

As to the first error alleged, Uebelhack is, in essence, asking us to reweigh the evidence. The bulk of the controversy concerning the contract was whether it was, as the trial court found, a contract for a fixed sum, or whether it was a contract for "work and materials", that is: a contract for the cost of material, labor and a certain percentage of profit for the contractor. The evidence on this issue was conflicting; however, there was ample evidence to support the judgment. Paul Zimmer testified as to the conversations and contract struck between the parties; expert witnesses testified as to the value of the improvements made by Uebelhack and the possibility of profits at the stated contract price; and prior transactions of the parties were shown to be consistent with the transaction in dispute. There was no error here.

Part of the evidence introduced to show the nature and terms of the contract were statements made by Edwin Uebelhack to Paul Zimmer. The admission of this evidence is alleged to be the second error on appeal. We assume that the statements were admitted as admissions, which are defined as statements against the interest of a party which are inconsistent with a defense or tend to establish or disprove a material fact. *Smith v. City of South Bend,* (1980) Ind.App., 399 N.E.2d 846; *Marsh v. Lesh,* (1975) 164 Ind.App. 67, 326 N.E.2d 626. It is clear that the declarations or admissions by a corporate officer or other agent are binding against his corporation if his statements are made within the scope of his authority. *Burger Man, Inc. v. Jordan Paper Products, Inc.,* (1976) Ind.App., 352 N.E.2d 821 (suit on oral contract). There is no question raised, but that Edwin Uebelhack had authority and was within the scope of his employment in discussing and entering into this contract. The only unusual factor is that Edwin Uebelhack is since deceased from the time of the making of the statements. It is generally held that such a fact does not, of itself, render the statements inadmissible. 29 Am.Jur.2d, *Evidence* § 668 (1967). The only relevant Indiana cases we have found, or reported in brief, involve claims against estates for services rendered to the deceased. In these cases, it has been held that the declarations of a deceased person, especially when they are corroborated by conditions and circum-

stances, are sufficient to establish the existence, terms and conditions of an express oral contract. *First Bank & Trust Co. of South Bend v. Tellson,* (1954) 124 Ind.App. 478, 118 N.E.2d 496; *Weir v. Lake,* (1942) 112 Ind.App. 318, 41 N.E.2d 828. We find no error in the admission of these statements.

We also treat, at this time, a third error alleged, which is whether there was sufficient evidence concerning the contractual term that the project would be completed by a certain date. Uebelhack questions the probability of such an important contractual term being oral. We deem this argument to be a request to reweigh the evidence and thus, reject it. We find no authority for the proposition that such a contractual term cannot be oral. Uebelhack also claims in this regard that an alleged "add-on" to the contract, an 80,000 bushel bin requested by Garrett, caused such a substantial change in the contract as to change any time deadline agreed by the parties. The trial court did not make relevant findings concerning this bin; however, we note that the record shows that Garrett required this bin complete by a certain date or else it did not want it, suggesting no change in the importance of the first deadline. At any rate, we do not see such an inescapable tie-in between the contract and the "add-on", if any, as to force us to the conclusion that the parties waived the contract deadline. We also note the bin was never erected.

We next turn to two issues raised concerning the damages awarded. As stated above, the case was tried and decided as an UCC-Sales transaction and, therefore, the damages awarded were under the damages sections of the Sales Article.

The trial court agreed with Garrett's contention at trial that the renovation and expansion were to be completed by April 1977, or at least wheat harvest, so that Garrett would not lose business in the critical harvest period. Also, Garrett contended, and the trial court agreed, that Garrett was anxious for completion in order to remove 56,645 bushels of corn inade-

quately stored in a quonset building before the heat of spring and summer would damage it and to remove it so Garrett could sell it at a profit before the market price dropped.

Uebelhack's argument is that because of the expansion of the facility, it is speculation and conjecture to award damages on the basis that the facility would get the business to fill to capacity.

Such argument ignores the first part of the damage award raised as error, which is actual loss on existing corn in the quonset building directly due to the failure to complete the contract on time. Thus, Uebelhack does not make an effective argument on this damage award, which we add is supported by the evidence.

The trial court found that Uebelhack repudiated the contract and left the goods in a non-conforming condition, which caused Garrett direct and incidental damages. All the damages complained of on appeal were found as consequential damages by the trial court. Ind. Code 26–1–2–715(2)(a) states in relevant part, "Consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller, at the time of contracting, had reason to know and which could not reasonably be prevented by cover or otherwise  .  .  .  ."

It is generally agreed that this section of the Code continues the test found in *Hadley v. Baxendale,* 9 Exch. 341 (1854) which is whether or not the seller, at the time of the making of the contract, had reason to know of the particular needs or requirements of the buyer. *Duesenberg & King, Sales and Bulk Transfers under UCC,* 14–61, § 14.-07(2) (1966).

Here, it is clear from the trial court's findings that Uebelhack was aware of Garrett's need to have the elevator operating by certain dates or that Garrett would lose money by not moving grain through the elevator during harvest season. Much of the loss of profits awarded by the trial court was not based on the loss of use of *expanded* capacity, but rather the inabili-

ty to use the elevator *at all* effectively. The volumes that were used for measuring damages were based on the previous year. The profit margins were standard; that is: Garrett got a certain price per bushel for moving the grain through the elevator at certain times of the year. It would buy a certain price below market and then immediately resell at market. We especially note that none of the damages awarded were based on anticipated profits from speculation in the grain market; in other words, expected profits from a rise or fall in the market price. Rather, the damages were awarded on the typical profit for a grain elevator acting as a "middleman". It is true that the profit margin changed based on the season and the amount of grain available; however, these margins were fairly predictable. We also note there was sufficient evidence to support the conclusion that at least the same volume levels could have been met in summer of 1977 due to a larger crop than the year before.

The only loss of profits based on new capacity was also based on previous year volumes. This loss was due to failure to buy at harvest time and take advantage of lower prices. The bin in question was filled at higher cost as soon as it was put in operation.

Lost profits need not be proven with mathematical certainty; the evidence must be, however, sufficient to allow a trier of fact to estimate the actual amount of profits lost with a reasonable degree of certainty and exactness. *See J. White* and *R. Summer Handbook of the Law Under Uniform Commercial Code*, § 10–4, at 321–322 (1972); *Compare Karlen v. Butler Manufacturing Co.*, (8th Cir. 1975) 526 F.2d 1373. There was sufficient evidence presented here.

Uebelhack complains as part of his damage argument, and as a separate issue, that he was not allowed "discovery" of Garrett's books and tax records during trial. We find in the record that the trial court reversed itself on allowing Uebelhack to examine the books and records during the trial with the remark that if Uebelhack

wished to preserve the issue for appeal, it could serve Zimmer with a *subpoena duces tecum*. Counsel for Uebelhack answered, "If we do that, your Honor, it'll be at a later time." Uebelhack did not serve the subpoena. Thus, we do not think that Uebelhack objected at trial to the failure of the trial court to allow discovery during trial. It cannot now be complained of on appeal.

The last issue for our consideration is whether the trial court erred in not giving Uebelhack judgment on the evidence because of the statute of frauds. The trial court noted that Uebelhack did not raise this affirmative defense specifically until its Motion for Judgment on the Evidence and, therefore, concluded that Uebelhack waived the issue. *See*, T.R. 8(C). We agree and further note that the doctrine of partial performance took the contract out of the UCC statute of frauds.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.