E & L RENTAL EQUIPMENT,
INC., Appellant–Plaintiff,

v.

WADE CONSTRUCTION, INC. and
James Wade, Appellees–
Defendants.

No. 46A03–0009–CV–342.

Court of Appeals of Indiana.

June 15, 2001.

Jennifer L. Evans, Michigan City, IN, Attorney for Appellant.

Gregory H. Hofer, LaPorte, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff E & L Rental Equipment, Inc. (E & L) appeals the trial court's judgment in favor of appellees-defendants Wade Construction, Inc., and James Wade, the President of Wade Construction, Inc., (collectively "Wade Construction"). E & L claims that the trial court erred in finding that a barter agreement governed by common law existed between E & L and Wade Construction, rather than a sales and lease agreement governed by the Uniform Commercial Code (U.C.C.). In the alternative, E & L asserts that even if the U.C.C. is inapplicable to the case at bar, this court should determine that a quasi contract existed between E & L and Wade, entitling E & L to restitution under a theory of unjust enrichment.

### FACTS

The facts most favorable to the verdict reveal that E & L and Wade Construction are both involved in the construction industry. E & L leases heavy equipment and Wade Construction is a general contractor. In October 1994, E & L and Wade Construction entered into a business relationship wherein E & L permitted Wade Construction to use its equipment for various construction jobs and supplied it with various goods, including sand, limestone, and wood chips. In return, Wade Construction promised to provide E & L with grinding and shredding services from Wade Construction's recycling division.

Between October 1994 and January 1997, E & L provided $83,645.73 worth of goods and rental equipment to Wade Construction, including $15,200 in repair fees resulting from neglect or improper opera-

tion of its equipment. In late November or early December 1996, E & L submitted invoices to Wade Construction demanding payment for the goods and equipment provided since October 1984.

On April 14, 1998, E & L filed a complaint against Wade Construction alleging the parties had entered into a lease agreement, that E & L had provided $83,645.73 worth of goods and equipment pursuant to that agreement, and that Wade Construction was liable to E & L for payment. In its answer to E & L's complaint, Wade Construction asserted several affirmative defenses, including that accord and satisfaction existed because the value of goods and services exchanged between E & L and Wade were equal.

A bench trial commenced on August 9, 2000. During trial, James Wade testified that an oral barter agreement existed between Wade Construction and E & L, and that Wade Construction had provided approximately $18,000 in services to E & L during the period between October 1994 and January 1997. Record at 201–03, 209–15. A former employee of Wade Construction, James Thompson, also testified that he was aware of the barter agreement and that he had been responsible for the payment of invoices received by Wade Construction. According to Thompson, E & L made no request for payment for the goods and equipment it provided to Wade Construction until late 1996, at which time E & L sent Wade Construction a "bulk of invoices." R. at 169–70. The trial court subsequently found in favor of Wade Construction and entered findings of fact and conclusions of law sua sponte. Specifically, the trial court found that a barter arrangement, rather than a lease agreement, existed between the parties, and that there was no evidence that Wade Construction refused to complete its part of the barter. The trial court also found that the parties'

agreement was contractual in nature and governed by the common law rather than the U.C.C. E & L now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

On appeal of claims from a bench trial, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). A review of findings of fact and conclusions of law that are issued sua sponte is based upon the same standard as a review of findings and conclusions issued upon a party's written request. *Mullis v. Brennan,* 716 N.E.2d 58, 62 (Ind.Ct.App.1999). We may affirm the judgment on any legal theory supported by the findings. *Id.* In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from its findings. *Id.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997). The judgment is clearly erroneous only when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* Findings of fact are clearly erroneous only when the record lacks any evidence to support them. *Id.* In reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

### II. E & L's Claim

E & L contends that the trial court erred in finding that a barter agreement governed by common law existed between E & L and Wade Construction, rather than a sales and leasing agreement governed by the U.C.C. Specifically, E & L claims that the lease provisions of the U.C.C. apply to its transfers of equipment and that the sales provisions of the U.C.C. apply to its provision of goods, such as sand and limestone. Thus, E & L asserts that it is entitled to payment for the value of the equipment and goods it supplied to Wade Construction.

As an initial matter, we note that E & L does not dispute the existence of a contract between itself and Wade Construction, only the nature of that contract. In essence, E & L argues that it contracted for payment for the equipment and goods it transferred to Wade Construction, whereas Wade asserts that the parties contracted for the exchange of goods and services.

The trial court's determination that a barter agreement existed between the parties is supported by witness testimony. Specifically, James Wade testified that he and Richard Loniewski, the manager of E & L, agreed that Wade Construction would provide E & L with services from Wade Construction's recycling division in exchange for use of E & L's equipment. R. at 197. In addition, James Thompson, who was responsible for processing and payment of invoices at Wade Construction, testified that he was personally aware of the bartering of services between the two companies. R. at 153–54.

With respect to the parties' course of conduct, Thompson testified that, rather than invoicing Wade after each transaction, E & L waited twenty-six months after it first started supplying Wade Construction with goods and equipment before sending Wade Construction all of the invoices. According to Thompson, prior to this collective dispatch of invoices, E & L had made no request for payment. James

Wade also testified that Wade Construction invoiced E & L for $18,000 worth of services, but did so purely for tax and bookkeeping purposes, and that Wade Construction was not paid for those services. R. at 223–24. Thus, based upon witness testimony and the parties' course of conduct, we find sufficient evidence to uphold the trial court's determination that a barter agreement existed between the parties. While E & L presented testimony supporting its position that it contracted for payment for the goods and equipment it provided to Wade Construction, that evidence is not favorable to the trial court's judgment. *See Breeden,* 678 N.E.2d at 425. Here the evidence is not without conflict, and all reasonable inferences to be drawn from the evidence do not lead to a conclusion different from that reached by the trial court. *See id.* Thus, the trial court properly found the existence of a barter agreement between the parties.

■ Additionally, we note that E & L's transfers of equipment to Wade Construction also fail to satisfy the U.C.C. definition of a lease. A "Lease," as defined in IND.CODE § 26–1–2.1–103, means "a transfer of the right to possession and use of goods *for a term* in return for consideration." (emphasis supplied). In this instance, there is no written agreement or other evidence indicating that E & L transferred the right to possession of its equipment to Wade Construction for only a fixed or specified term. Moreover, Wade Construction provided evidence that E & L sometimes retrieved its equipment from Wade Construction for use elsewhere, R. at 204–05, which is contrary to customary leasing practice. Thus, we conclude that E & L's transfers of equipment to Wade Construction occurred pursuant to a barter agreement, not a lease agreement.

■ Be that as it may, E & L goes on to assert that even if this court determines that a barter agreement existed between the parties, the sales provisions of the U.C.C. nevertheless apply to the transactions in which E & L provided Wade Construction with goods, such as sand and limestone. Under the U.C.C., "a sale occurs when the title of goods passes from the seller to the buyer for a price." IND. CODE § 26–1–2–106, –401. Goods are all things which are moveable at the time of the contract for sale. I.C. § 26–1–2–105. "The price [for goods] can be made payable in money or otherwise." I.C. § 26–1–2–304(1). Burns comment to I.C. § 26–1–2–304(1), states that the phrase " 'money or otherwise' could not be broader. Services can be the 'price' for goods. *Barters are included.*" I.C. § 26–1–2–304(1) (Michie 1992) (emphasis supplied). Here, E & L provided goods, in the form of sand, limestone, and wood chips, to Wade, in exchange for recycling services. As the U.C.C. provides that bartered services can be the price for the sale of the goods, we conclude that E & L's transfers of goods to Wade Construction fall under the sales provisions of the U.C.C.

We observe, however, that the contract for the sale of goods between E & L and Wade Construction would ordinarily be unenforceable because it violates the Statute of Frauds. Specifically, the Statute of Frauds provides:

[A] contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

IND.CODE § 26–1–2–201(1).

Here, the value of goods that E & L provided to Wade Construction was in ex-

cess of $500 and their agreement was not reduced to writing. However, Wade Construction failed to plead the Statute of Frauds as an affirmative defense in its responsive pleading as required by Ind. Trial Rule 8(C). Rather, it moved to amend the pleadings to include this affirmative defense after the parties' case-in-chief, and the trial court subsequently denied its motion. R. at 6–7. The trial court's action was proper, inasmuch as we have determined that the failure to plead an affirmative defense in a timely fashion results in a waiver of the issue. *Paint Shuttle, Inc. v. Continental Cas. Co.,* 733 N.E.2d 513, 525 (Ind.Ct.App.2000); *Uebelhack Equip., Inc. v. Garrett Bros., Inc.,* 408 N.E.2d 136, 140 (Ind.Ct.App.1980).

▆▆▆ Waiver notwithstanding, we note that the doctrine of partial performance will remove a contract from the U.C.C. statute of frauds requirement. *Uebelhack,* 408 N.E.2d at 140. To qualify as a part performance of the oral contract, certain circumstances must be present and these circumstances must be founded on, and referable to, the oral agreement. *Perkins v. Owens,* 721 N.E.2d 289, 292 (Ind. Ct.App.1999).

As we have pointed out, the parties have been engaged in a course of dealing since 1994. It was not until 1996 that E & L submitted invoices to Wade Construction requesting payment for equipment. E & L had made no prior request for payment. The evidence showed that E & L had supplied Wade Construction with equipment and goods, which included sand, limestone and wood chips on a continuous basis in exchange for Wade Construction's permitting E & L to use its recycling division services. Moreover, there was no evidence demonstrating that Wade Construction failed to perform any part of the barter agreement. As a result, such performance illustrated by the parties' course

of dealing through the years, excepted the agreement from the statute of frauds requirement.

Inasmuch as we have found no breach of contract between the parties, our determination that the U.C.C. applies to E & L's provision of goods to Wade Construction does not lead to an outcome different to that of the trial court. Specifically, I.C. § 26–1–1–106(1) provides that "the remedies provided by Ind.Code 26–1 shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." Here, the parties agreed that Wade would provide recycling services in exchange for equipment and goods from E & L. Inasmuch as Wade Construction adhered to the barter agreement and provided its recycling services in consideration for the equipment and goods it received from E & L, there was no breach of contract and, thus, E & L is not entitled to a remedy under the common law or the U.C.C.

▆▆▆ Finally, we decline E & L's request to find a quasi-contract between the parties and to award it restitution on a theory of unjust enrichment. A "Quasi-contract ... refer[s] to the situation in which obligations are imposed by law, without regard to the assent of the parties bound, to permit a contractual remedy where no contract exists in fact but where justice nevertheless warrants a recovery under the circumstances as though there had been a promise." *City of Indianapolis v. Twin Lake Enters., Inc.,* 568 N.E.2d 1073, 1078 (Ind.Ct.App.1991). "The existence of a valid express contract for services ... precludes implication of a contract covering the same subject matter." *Kincaid v. Lazar,* 405 N.E.2d 615, 619 (Ind.Ct.App.1980). In this instance, the trial court's findings and the evidence adduced at trial show the existence of an

express barter agreement between the parties which precludes E & L's claim for restitution.

 Moreover, it is well settled that "where the parties have agreed upon consideration of an indeterminate value, this court will not inquire into the adequacy of that consideration but will respect the judgment of the parties and enforce the contract." *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind.Ct.App.1995), *trans. denied.* Our determination that E & L's transfers of sand and gravel to Wade Construction are governed by the U.C.C., does not alter our reluctance to examine the adequacy of consideration. Here, the parties agreed to exchange goods and equipment from E & L for recycling services from Wade Construction, by implication equating their values. There is no evidence that Wade Construction has at any time refused to uphold its part of the barter agreement. Indeed, Jim Wade testified that he was aware that the value of the equipment and goods received from E & L exceeded the services provided by Wade Construction, but that he expected and intended to provide services in exchange for the difference. R. at 202–03, 205, 206. Therefore, we will not interfere with the agreement struck by the parties, and we conclude that E & L is not entitled to recover the difference in the value of the exchanged consideration.

Judgment affirmed.

BAILEY, J., and MATHIAS, J., concur.