STATE OF MAINE                         BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                        DOCKET NO. BCD-CV-2016-30


HEIDI J. WEST, PERSONAL          )
REPRESENTATIVE OF THE ESTATE OF  )
JESSE PURVES, et al.,            )
                                 )
          Plaintiffs,            )        ORDER ON MOTIONS IN LIMINE
                                 )
     v.                          )
                                 )
SEAN HUSSEY,                     )

          Defendant


In the lead up to trial, both parties have filed Motions in Limine. On Tuesday, April 16, 2019, a hearing was held on all of the Motions. Plaintiff was represented by attorney Sue Driscoll, Esq. Defendant was represented by attorneys Dan Mitchell, Esq. and Zach Brandwein, Esq. During the hearing, the Court put several of its rulings on the record. The Court took other issues under advisement. The Court now issues this Order to capture in one place, at least in abbreviated form, its rulings on the Motions.

With regard to Plaintiff's Motions, the Court decides as follows:

1. <u>Statements of Jesse Purves</u>. As explained on the record, Counsel agreed that Jesse Purves (and in the wake of his death, the Estate) is not an individual party to this action. Accordingly, by agreement of the parties, the Court dismisses Jesse Purves (and therefore the Estate) as an individual party to this action.[1]  As this case comes on for trial, the only Plaintiff is Jesse Purves & Associates Wealth Management, LLC (the "LLC"). Any statements

---

[1] This dismissal does not, in and of itself, affect Plaintiff's ability to call Heidi West as a witness, and the Court reserves for trial any ruling on calling Ms. West as a witness.

1

of Mr. Purves offered at trial will thus be subject to the requirements of M.R. Evid. 804(b)(1)-(4), unless Defendant offers the statements against the LLC and establishes that Mr. Purves made the statements in a representative capacity that satisfies the requirements of Rule 801(d)(2)(A)-(E). In this latter case, the statements constitute admissions of the LLC, are not hearsay, and Rule 804(b) does not apply.  See Uebelhack Equip., Inc. v. Garrett Bros., Inc., 408 N.E.2d 136, 137-138 (App. Ct. Ind. 1980).

2.  Use of Criminal History.  As discussed on the record, but reserving final decision until the context becomes better understood at the trial, the Court will likely allow in evidence of Mr. Purves' OUI conviction under Rule 404(b) as relevant to causation.  The Court will not permit the proffered evidence of arrests without convictions, or of convictions dating from the early 1990s.

With regard to Defendant's Motions,  Court decides as follows:

1.  The Estate is Not to be Described as a Party.  For the reasons discussed above and at the hearing, counsel agree the Estate is not a party to the case, and should not be described as a party.

2.  Julie Perrino is Not to Be Identified as the Widow of Jesse Purvis.  Counsel agree Ms. Perrino is not the widow of Mr. Purvis and will not be described as such at trial.

3.  Reference to the Children of Jesse Purvis.  Brief mention of the children of Mr. Purvis is permissible, but Plaintiff is cautioned against any lengthy testimony regarding the children designed to amplify the sympathy factor.

4.  Reference to Mr. Hussey's Alleged Extramarital Affair.  Plaintiff is not permitted to refer to or inquire about Mr. Hussey's alleged extramarital affair under Rule 608(a) or (b). The weight of authority is that the existence of an extramarital affair does not go to character

for truthfulness or untruthfulness. State v. Moses, 143 N.H. 461, 464-65, 726 A.2d 250, 253 (1999)(although immoral, adultery does not relate directly to truthfulness); State v. Bell, 512 S.W.3d 167, 196 (Tenn. 2015)(an extramarital affair, in and of itself, is not necessarily probative of truthfulness). Further, the probative value of any Rule 608 reference to the alleged extramarital affair would be substantially outweighed by its danger of unfair prejudice. M.R. Evid. 403. The Court reserves for trial any decision about whether the alleged affair comes in under Rule 404(b), and Plaintiff's counsel must check with the Court at side bar or otherwise outside the presence of the jury to discuss the issue before asking any questions regarding the alleged affair.

5. Referee's Testimony and Reports. Both sides want the Referee from the divorce case, Mark Stickney, to testify. It is reported that Mr. Stickney does not object, provided a date and time certain are designated for his testimony. Counsel agree the testimony will occur during Plaintiff's case. The divorce case was not sealed (only one motion in the divorce case was sealed, and that motion does not appear to relate to Mr. Stickney). Accordingly, Mr. Stickney is ordered to appear to testify during Plaintiff's case, on a specific date and time arranged by counsel. Counsel are discussing whether to allow into evidence certain agreed portions of Mr. Stickney's referee reports. If counsel can agree, the Court will allow those agreed-upon portions into evidence. If counsel cannot agree, the reports will be excluded as hearsay.

6. Request to Sequester Julie Perrino. Counsel agree that Ms. Perrino is a member of the LLC. As a member of the LLC, Mr. Perrino fits within the scope of an officer or employee under Rule 615(b). Accordingly, if the LLC selects Ms. Perrino to be its representative at trial, Ms. Perrino will not be sequestered.

7. <u>Late Produced Documents</u>. For the reasons discussed on the record, the Court excludes the documents described in attorney Mitchell's letter dated April, 2019, unless those documents were timely produced during the discovery period. The Court reserves for trial, ruling on whether the documents can be used to refresh recollection or for impeachment purposes.

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.


Dated: April 17, 2019 _____/s_____
Michael A. Duddy
Judge, Business and Consumer Docket

STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                         DOCKET NO. BCD-CV-2016-30 ✓

HEIDI J. WEST, PERSONAL          )
REPRESENTATIVE OF THE ESTATE OF  )
JESSE PURVES, et al.,            )
                                 )
            Plaintiffs,          )      ORDER DENYING DEFENDANT'S
                                 )      MOTION FOR SUMMARY JUDGMENT
      v.                         )
                                 )
SEAN HUSSEY,                     )

            Defendant.

Defendant Sean Hussey ("Hussey") has moved for summary judgment, and that motion is pending before this Court. Plaintiff Heidi J. West, acting in her capacity as the personal representative of the estate of Jesse Purves ("the Estate"), opposes the motion. The Court heard oral argument on the motion on November 14, 2018. Both parties appeared through counsel. John A. Woodcock III, Esq. represented Hussey and Susan Driscoll, Esq. represented Plaintiffs.

PROCEDURAL HISTORY

The Estate seeks recovery against Hussey for his alleged breach of a Noncompete and Non-Solicitation Agreement ("NSA") that was allegedly entered into between Hussey and his former employer, Plaintiff Jesse Purves & Associates Wealth Management, LLC. Hussey's current employer, Harborview Investments, LLC, ("Harborview") was also named as a defendant but was dismissed pursuant to M.R. Civ. P. 12(b)(6) on January 13, 2017. Jesse Purves ("Purves") was initially the plaintiff in this action. After Purves's unexpected passing on August 1, 2017, Heidi J. West was substituted as Plaintiff in her capacity as personal representative of the estate of Jesse Purves.

1

On August 11, 2017, this Court granted Hussey's motion to strike the Estate's expert witness designation on the grounds that it was untimely and inadequate under the requirements of M.R. Civ. P. 26(b)(4)(A)(i). The Estate's former counsel, Attorney Anthony Sineni III, moved to withdraw on January 18, 2018, and the motion was granted on January 29, 2018. The Estate's current counsel, Attorney Susan B. Driscoll, entered her appearance the following day, on January 30, 2018. Thereafter, the Estate moved to enlarge discovery deadlines and for reconsideration of the Court's order striking its expert witness designation; the Court denied both motions on March 7, 2018.

## FACTS

The parties agree on the basic historical facts of Hussey's employment as an associate of Purves, his execution of the NSA, and the termination of his employment by Purves. Hussey began working for Purves and Associates as an Associate Financial Advisor on April 18, 2012. (Def's Supp'g S.M.F. ¶ 1; Pl's Add'l S.M.F. ¶ 11.) Purves and Associates was an affiliate of Ameriprise Financial Services, Inc., a nationwide financial services business. (Def's Supp'g S.M.F. ¶ 2.) Purves and Associates was the predecessor entity to Plaintiff Purves & Associates Wealth Management, LLC. (Pl's Add'l S.M.F. ¶ 7.) Purves and Associates was owned and operated by Purves. (Def's Supp'g S.M.F. ¶ 2.) At all times, Hussey's employment at Purves and Associates was at will. (Def's Supp'g S.M.F. ¶ 9.) On December 9, 2014, Purves presented Hussey with a draft NSA. (Def's Supp'g S.M.F. ¶ 16.) Hussey signed the NSA the following day on December 10, 2014. (Def's Supp'g S.M.F. ¶ 31.) The NSA states that Hussey "shall not for a period of Thirty Six (36) months after [he] is no longer employed by [Purves and Associates] directly or indirectly engage in services or perform work for any of the clients or known prospects of [Purves and Associates]." (Def's Supp'g S.M.F. ¶ 32.) The NSA defines

engage to mean "engage, participate, affiliate with or act in any capacity for himself or on behalf of any other person . . ." (Def's Supp'g S.M.F. ¶ 33.) The NSA "specifically [does] not preclude [Hussey] from continuing to perform services for those individuals or entities which are identified as clients of [Hussey] under the Ameriprise Client ID System . . . ." (Def's Supp'g S.M.F. ¶ 34.) On April 10, 2015, Purves terminated Hussey's employment with Purves and Associates. (Def's Supp'g S.M.F. ¶ 52.) Shortly after his termination, Hussey began working at Harborview. (Def's Supp'g S.M.F. ¶ 57; Pl's Add'l S.M.F. ¶ 61.) Upon commencing work at Harborview, Hussey performed work for Purves and Associates' clients within thirty-six months of the termination of his employment. (Def's Supp'g S.M.F. ¶ 61; Pl's Add'l S.M.F. ¶ 61.)

Despite agreement on the general series of events giving rise to this lawsuit, there are genuine disputes with respect to three critical material factual issues. First, there is a genuine factual dispute about whether the NSA was supported by consideration. (Def's Supp'g S.M.F. ¶¶ 36-44.) According to Hussey, Purves presented the NSA as a take-it-or-leave-it proposition, without any negotiation. According to the Estate, as consideration for the NSA Purves agreed to reclassify the clients that Hussey had brought to the company so they would be under Hussey's Ameriprise ID number; revise Hussey's job so that Hussey would be in a position to potentially increase his compensation and build up his book of business; and pay Hussey $5,000. (Pl's Add'l S.M.F. ¶¶ 28-30.) According to Hussey, there is no dispute that Purves failed to reassign Hussey's clients. According to the Estate, Purves initiated the process with Ameriprise to reassign the clients under Hussey's ID number and thereafter the matter was beyond Purves's control.

3

Second, there is a genuine factual dispute about whether Hussey solicited any of Purves's clients to follow him to Harborview. (Def's Supp'g S.M.F. ¶ 58; Pl's Opp'g S.M.F. ¶ 58.) According to Hussey, clients contacted him of their own accord to express concern about leaving their life savings with Purves, and Hussey advised them he could not ask for their business. (Def's Supp'g S.M.F. ¶¶ 58-60, 66.) According to the Estate, Hussey manufactured this concern by suggesting that clients conduct a Google search of Purves so they could see his arrest record and other damaging information; telling clients that Purves was in jail; and instructing clients to call the Ameriprise "Home Office" and ask to be put into a "House Account" so Hussey could transition them from Ameriprise (and Purves) to Harborview (and himself). (Pl's Opp'g S.M.F. ¶¶ 58-60, 66; Pl's Add'l S.M.F. ¶¶ 48-56.)

Finally, there is a genuine factual dispute about whether Hussey's alleged breach of the NSA caused damages. There does not seem to be any real dispute that Purves and Associates was rapidly losing value in 2015 until it was ultimately sold at auction in August 2015 pursuant to court order during Purves's divorce. (Def's Supp'g S.M.F. ¶¶ 77, 80; Pl's Add'l S.M.F. ¶¶ 62, 74-75, 77-79.) It is also undisputed that Purves had a severe substance use disorder that by early 2015 was impacting his ability to work. (Pl's Add'l S.M.F. ¶ 38.) Rather, the dispute is about whether and to what extent the decrease in value can be attributed to Purves's substance use disorder or Hussey's alleged solicitation of clients away from the business. According to Hussey, Purves's substance use disorder (and its collateral effects) was the sole cause of the company's loss of value. (Def's Reply to Pl's Add'l S.M.F. ¶ 78-79.) According to the Estate, the decline in the company's value was attributable in whole

4

or in part to clients being solicited, "poached," and diverted by Hussey in violation of the NSA.[1] (Pl's Add'l S.M.F. ¶ 75.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. To survive a defendant's motion for summary judgment, the nonmoving plaintiff must demonstrate that material facts are disputed and must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021.

## DISCUSSION

The Court must deny Hussey's motion for summary judgment in light of the genuine disputes of material fact outlined above. *See* M.R. Civ. P. 56(c). First, Hussey is not entitled to judgment as a matter of law on the issue of the enforceability of the NSA. Hussey argues that the NSA is unenforceable under two alternative theories: (1) that there was no bargained-for consideration to support his acquiescence to the NSA and (2) that the bargained-for

---

[1] Hussey argues that the Estate cannot satisfy its burden of proof on damages at summary judgment or at trial without an expert, but as explained below, the Estate has presented sufficient evidence through the affidavit of Julie Perrino to establish a prima facie case for damages.

5

consideration supporting his acquiescence to the NSA was never performed by Purves/ Purves and Associates.

Hussey is correct that either theory could potentially excuse his non-performance *if there was no dispute of fact on the issues. See Whitten v. Greeley-Shaw*, 520 A.2d 1307, 1309 (Me. 1987) ("Every contract requires 'consideration' to support it, and any promise not supported by consideration is unenforceable."); *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1 (holding that "a material breach . . . discharge[s]" the other party to the contract's duties under the contract). Consideration is a question of fact, as is material breach. *See Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 13, 776 A.2d 1229 ("Whether a material breach has occurred is a question of fact"). In this case, the operative facts are very much in dispute. At trial, the factfinder may agree with one of Hussey's alternative versions of events and find that either (1) the NSA has no consideration to support it because Purves did not promise or give anything to Hussey in exchange for his promise not to compete; or (2) that Purves materially breached the NSA by failing to fulfill his promise to reclassify the clients that Hussey had brought to the company so they would be under Hussey's Ameriprise ID number. Or the factfinder may agree with the Estate's version of events, and find that the NSA was supported by consideration and Purves satisfied his end of the bargain in whole or in part. In light of the unresolved factual questions described above, Hussey has not shown that he is entitled to judgment as a matter of law on the enforceability of the NSA.

Second, Hussey is not entitled to judgment as a matter of law on causation. Whether Hussey breached the agreement by "directly or indirectly engag[ing] in services or perform[ing] work for any of the clients or known prospects of [Purves and Associates]" is a matter of genuine dispute between the parties. A factfinder could agree with Hussey that all

6

of the clients who followed him to Harborview did so of their own accord based on Purves's health and legal issues, or could agree with the Estate that Hussey solicited Purves and Associates' clients to join him upon his departure.

Finally, Hussey is not entitled to judgment as a matter of law on damages. The Estate, of course, has the burden to prove damages. Hussey emphasizes that the Estate has no expert, and argues that without the aid of expert testimony any determination of the damages resulting from his breach of the NSA requires impermissible speculation. *See Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759 (plaintiff opposing summary judgment "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating"). In this case, however, the Estate has presented enough evidence through the Affidavit of Julie Perrino to controvert Hussey's facts and establish a prima facie case on damages. *See Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

Hussey further argues he should prevail at this stage because he "would be entitled to a judgment as a matter of law if [Plaintiffs] presented nothing more than was before the court at the summary judgment hearing." *See Reliance Nat'l Indem. v. Knowles Indus. Servs. Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220. It may be that without the aid of an expert, and relying only on fact witnesses such as Perrino and others, the Estate will be unable to mount a persuasive case at trial for damages. But given the existence of at least one fact witness on damages (and possibly others), the lack of an expert is not necessarily fatal to the Estate's case.

> Damages are not fatally uncertain for the reason that the amount of the loss sustained is incapable of exact proof by mathematical demonstration. The triers of facts are allowed to act upon probable and inferential as well as direct and positive

7

proof. They are permitted to make the most intelligible and probable estimate which the nature of the case will permit, given all the facts and circumstances having relevancy to show the probable amount of damages suffered. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability.

*Merrill Trust Co. v. State*, 417 A.2d 435, 440-41(Me. 1980). It is the role of the factfinder to weigh that evidence and decide whether the Estate has carried its burden. At this stage, the Estate has adduced sufficient evidence to survive the Motion, and the Court cannot deny the factfinder the opportunity to evaluate the evidence at trial.

For all the foregoing reasons, the Defendants' motion for summary judgment is denied.

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

Dated: 12-6-2018

_Michael A. Duddy_
Michael A. Duddy
Judge, Business and Consumer Docket

8

STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss.                       BUSINESS AND CONSUMER COURT
                                      LOCATION: PORTLAND
                                      DOCKET NO. BCD-CV-2016-30

| | | |
|---|---|---|
| HEIDI J. WEST, PERSONAL REPRESENTATIVE OF THE ESTATE OF JESSE PURVES, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER ON PLAINTIFFS' MOTION TO ENLARGE DISCOVERY |
| v. | ) ) | DEADLINES AND TO RECONSIDER ORDER STRIKING EXPERT |
| SEAN HUSSEY, | ) | WITNESS |
| Defendant. | | |

This matter is before the Court on Plaintiffs' motion to enlarge discovery deadlines and motion to reconsider order striking expert witness. Defendant Sean Hussey ("Hussey") opposed the motion, and Plaintiffs timely replied. The Court heard oral argument on February 16, 2018. Counsel for both parties were present and were heard.

## PROCEDURAL HISTORY

This case seeks recovery against Hussey for his alleged breach of a Noncompete and Non-Soliciation Agreement ("NSA") that was allegedly entered into between Hussey and his former employer, Plaintiff Jesse Purves & Associates Wealth Management. Jesse Purves was initially another Plaintiff in this action. Mr. Purves died unexpectedly on August 1, 2017. Heidi J. West as personal representative of the estate of Jesse Purves was substituted as Plaintiff on January 30, 2018.

This action was filed in Superior Court on September 15, 2016, and accepted by the Business and Consumer Court on October 25, 2016. Harborview Investments initially was a

1

named Defendant. They subsequently were dismissed from this case by the Court's Order dated January 13, 2017 granting in part Plaintiffs' Rule 12(b)(6) motion.

On February 23, 2017, the Court entered Case Management Scheduling Order No. 1. All deadlines in the scheduling order were set by agreement of the parties. The scheduling order set forth a deadline of May 22, 2017 for Plaintiffs to designate experts and provide "a complete statement of the information and reports required by M.R. Civ. P. 26(b)(4)(A)(i)." It set a discovery deadline of August 22, 2017.

On May 25, 2017, three days after the expert deadline had passed, Plaintiffs filed a motion to extend that deadline by two weeks. The motion was granted without objection, making the new expert deadline June 9, 2017. Plaintiffs missed this deadline as well, as they did not retain an expert until June 14, 2017 and did not inform Hussey that they had retained an expert until June 16, 2017. Hussey moved to strike the expert designation on June 28, 2017 as untimely and on the substantive ground that the disclosure was inadequate under the requirements of M.R. Civ. P. 26(b)(4)(A)(i). The Court agreed with Hussey and granted his motion to strike in its order entered August 11, 2017.

Concurrent with their opposition to Hussey's motion to strike, Plaintiffs filed a motion to extend time to provide expert report and extend the discovery deadline. The Court granted that motion in part and denied it in part. In recognition of Mr. Purves's passing, the Court agreed to extend the discovery deadline to September 22, 2017. However, the Court did not grant the motion to extend time to provide expert report. Notwithstanding the one-month extension of the discovery deadline, Plaintiffs never conducted any discovery in this case, either before or after Mr. Purves passed away.

2

Plaintiffs filed a suggestion of death of Mr. Purves on August 7, 2017. Plaintiffs' former counsel, Attorney Anthony Sineni III, moved to withdraw on January 18, 2018, and the motion was granted on January 29, 2018. Plaintiffs' current counsel, Attorney Susan B. Driscoll, entered her appearance the following day, on January 30, 2018.

## STANDARD OF REVIEW

"When a party moves for enlargement of time after the time for filing a pleading has expired, Rule 6(b) of the Maine Rules of Civil Procedure requires a showing of excusable neglect for that party to obtain the enlargement of time. 'Determinations of excusable neglect are reviewed for errors of law or an abuse of discretion.'" *Camden Nat'l Bank v. Peterson*, 2008 ME 85, ¶ 16, 948 A.2d 1251 (quoting *Dyer Goodall & Federle, LLC v. Proctor*, 2007 ME 145, ¶ 18, 935 A.2d 1123).

Under M.R. Civ. P. 7(b)(5), a motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." "Rule 7(b)(5) is intended to deter disappointed litigants from seeking 'to reargue points that were or could have been presented to the court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (quoting M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.)). "A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R. Civ. P. 59(e). A trial court's ruling on a motion for reconsideration is reviewable for an abuse of discretion. *Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714.

## DISCUSSION

3

This Court enjoys substantial discretion in deciding motions for enlargement of time. *Camden Nat'l Bank*, 2008 ME 85, ¶ 18, 948 A.2d 1251. However, M.R. Civ. P. 6(b)(2) requires a showing of excusable neglect when the motion is brought after the expiration of the period prescribed by order.

Plaintiffs' motion argues that this is an important case that should be decided on the merits,[1] and that both sides would benefit from Plaintiffs being allowed the opportunity to obtain discovery. (Pl's Mot. 4-9.) Plaintiffs' summarize the substance of their complaint and why they should ultimately prevail (Pl's Mot. 5-7), and argue that the harm they will suffer if the discovery deadlines are not enlarged greatly outweighs the prejudice to Hussey if they are enlarged. (Pl's Mot. 8-9.) However, none of this is relevant to the issue before the Court on the instant motion; specifically, whether Plaintiffs' failure to comply with the agreed-to discovery deadline in this case was the result of excusable neglect.

Implicit in Plaintiffs' motion are two grounds on which the Court could find that Plaintiffs' failure to conduct discovery was the result of excusable neglect. First, Plaintiffs suggest that the discovery deadline of August 22, 2017 "allow[ed] just six months for discovery . . . ." and that "[f]or some reason, this fact intensive case. . . was placed on such a short track." (Pl's Mot. 2.) (*See also* Pl's Mot. 4 ("It is not clear why this case was fast tracked from the start.").)

The Court disagrees with Plaintiffs' implication that the scheduling order in this case represented a "fast track." As is general practice in this Court, the deadlines in the scheduling order were by agreement of the parties. A six-month discovery period was proposed by counsel. There was nothing expedited about the scheduling order entered by the Court, and the discovery period

---

[1] The Court notes that Plaintiffs' decision not to pursue discovery within the court-ordered period—and this Court's decision to enforce that period—does not preclude a judgment on the merits. *Cf. State v. Poulin*, 2016 ME 110, ¶¶ 28-29, 144 A.3d 574.

was entirely sufficient **if prior Plaintiffs' prior counsel had diligently pursued discovery, which was not done here**. To the extent that Plaintiffs now question why the Court imposed what they characterize as a "fast track" schedule, the answer is that it is what they agreed to.[2] Regardless, Plaintiffs' failure to conduct any discovery during that six-month window belies any argument that it was an insufficient amount of time.

Plaintiffs also imply that Mr. Purves's passing justifies their failure to conduct discovery within the deadline. (Pl's Mot. 4, 9.) However, Mr. Purves did not pass away until August 1, 2017—less than three weeks prior to the August 22 deadline. Over five months had passed since the Court entered its scheduling order of February 23, 2017, memorializing the agreed-to discovery deadline. During that time, no discovery requests at all were served by Plaintiffs. Nonetheless, in recognition of Mr. Purves's passing, the Court did grant Plaintiffs a one-month extension of the discovery deadline and set a new deadline of September 22, 2017 in its order on Hussey's motion to strike, which was entered August 11, 2017. Plaintiffs failed to utilize this extension and did not serve any discovery requests before the extended deadline. In sum, Plaintiffs do not show how Mr. Purves's passing weeks before the close of discovery excuses their neglect in failing to conduct discovery over those previous five months, or during the one-month extension granted by the Court thereafter.

Under these circumstances, the Court cannot find that the Plaintiffs' failure to conduct discovery within the period prescribed in the scheduling order was the result of excusable neglect. M.R. Evid. 6(b)(2). Rather, it was the result of prior Plaintiffs' counsel failure to diligently and

---

[2] The Court makes clear that while it addresses the Plaintiffs as a unitary entity, as noted above, Mr. Purves passed away on August 1, 2017, and his former counsel withdrew on January 18, 2018, effective January 29. Attorney Driscoll did not enter her appearance until January 30, 2018. The failings identified here are entirely those of prior Plaintiffs' counsel and not of Attorney Driscoll.

5

appropriately prosecute this case. Plaintiffs' motion to enlarge discovery deadlines is therefore DENIED.

Plaintiffs' motion to reconsider order striking expert witness is premised on essentially the same grounds as the motion to enlarge discovery deadlines. (Pl's Mot. 9.) Although it is brought untimely under M.R. 59(e) (14 days to bring motion to alter or amend judgment), as Plaintiffs point out, in this case the 14-day deadline would have fallen during a period in which Mr. Purves had died but no personal representative had been named. The Court thus finds that Plaintiffs are excused from their late filing of the motion to reconsider and proceeds to consider the motion on its merits.

The Court DENIES the motion to reconsider its order granting Hussey's motion to strike. Plaintiffs offer three possible reasons why the expert designation was both untimely and inadequate under M.R. Civ. P. 26(b)(4)(A)(i): the "accelerated track," issues with prior counsel, or issues with Mr. Purves. (Pl's Mot. 9.) None of these possibilities represents an error, omission, or new material that could not previously have been presented. M.R. Civ. P. 7(b)(5). Nor do they explain why the expert designation was totally inadequate under the requirements of M.R. Civ. P. 26(b)(4)(A)(i). The Court understands Plaintiffs' new counsel's urge to reargue the motion to strike on which Hussey prevailed in July 2017. However, M.R. Civ. P. 7(b)(5) and the advisory notes thereto explicitly disallow reargument. M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.).

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Plaintiffs' motion to enlarge discovery deadlines is DENIED.

That Plaintiffs' motion to reconsider order striking expert witness is DENIED.

6

The case will be scheduled for a telephonic status conference with counsel.

The Clerk is requested to enter this on the docket for this case, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Dated: __3/7/18__

_____
Richard Mulhern
Judge, Business and Consumer Court